**SQUIRE PATTON BOGGS (US) LLP**
Yamili F. Gonzalez (State Bar # 327820)
yamili.gonzalez@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Telephone:    +1 213 689 6540
Facsimile:    +1 213 623 4581

Kristin L. Bryan (admitted *pro hac vice*)
kristin.bryan@squirepb.com
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
Telephone:  +1 212 872 9800
Facsimile:  +1 212 872 9815

*Attorneys for Defendant The Procter & Gamble Company*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA DAWKINS,<br><br>    Plaintiff,<br><br>    v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>    Defendant. | Case No. 1:25-cv-01287-JLT-HBK<br><br>**DEFENDANT THE PROCTER & GAMBLE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Judge:         Hon. Jennifer L. Thurston<br><br>Hearing: December 26, 2025 |

1    **TO THE HONORABLE COURT, AND TO PLAINTIFF AND HER COUNSEL OF**

2    **RECORD HEREIN:**

3        **NOTICE IS HEREBY GIVEN** that on December 26, 2025 at 9 a.m. in Courtroom 4, 7th

4    Floor of the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, CA 93721,

5    Defendant The Procter & Gamble Company ("P&G") will and hereby does move the Court to

6    dismiss the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(1) and

7    12(b)(6), on the grounds that Plaintiff lacks Article III standing and fails to state a claim against

8    P&G upon which relief can be granted.

9        This Motion is based upon this Notice, the accompanying Memorandum of Points and

10    Authorities, all pleadings, papers and records on file in this Action, and such other oral argument

11    and documentary evidence as may be presented at or before the time of adjudication of this Motion.

12        On November 5, 2025, counsel for the parties discussed the substance of the contemplated

13    motion via telephone and subsequent emails but were not able to come to a resolution.  Pursuant

14    to paragraph 1.C of this Court's Standing Order [ECF No. 3-1], undersigned counsel certifies that

15    meet and confer efforts have been exhausted.

16

17    Dated: November 21, 2025            **SQUIRE PATTON BOGGS (US) LLP**
                                        By: */s/ Kristin L. Bryan*
18                                        Kristin L. Bryan

19                                        *Attorney for Defendant The Procter & Gamble*
                                        *Company*
20

21

22

23

24

25

DEFENDANT'S NOTICE OF MOTION
                                        & MOTION TO DISMISS
                                        1:25-cv-01287-JLT-HBK

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iv

I.    Introduction ....................................................................................................1

II.    Background ......................................................................................................3

      A.    The Website and P&G's Privacy Policy ...................................................3

      B.    Internet Background and the Alleged Tracking Technologies .................5

      C.    Plaintiff's Alleged Website Visit and Alleged Harms ............................6

III.    Legal Standard ...............................................................................................7

IV.    Argument ........................................................................................................9

      A.    The Complaint Should Be Dismissed Because Plaintiff Has Not Suffered a Concrete Injury and Thus Lacks Article III Standing................................9

      B.    The Tracking Technologies as Alleged Do Not Meet the Definition of Pen Registers or Trap and Trace Devices. ....................................................12

          1.    The Tracking Technologies Are Not Pen Registers nor Trap and Trace Devices Because They Do Not Collect the Origin Address Information for Incoming Communications or Destination Address Information for Outgoing Communications. ................................12

          2.    The Tracking Technologies Are Not Pen Registers nor Trap and Trace Devices Because They Allegedly Collect Contents of Communications. ................................................................16

          3.    Section 638.51 Applies Only to Telephonic Wire or Electronic Communications. ................................................................17

      C.    Plaintiff's Claim for Violation of Section 638.51 Fails Because Plaintiff Consented to the Privacy Policy, Which Discloses the Tracking Technologies. ........................................................................................18

V.    Conclusion ....................................................................................................21

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*A.S. v. SelectQuote Ins. Servs.*,
   No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024).................8, 19

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................8

7

*Aviles v. LiveRamp, Inc.*,
   No. 24STCV19869, 2025 WL 487196 (Cal. Super. Ct., L.A. Cnty. Jan. 28,
   2025) ...............................................................................................................13, 15, 16

8

9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................8

10

*Camacho v. DG Premium Brands LLC*,
   No. 24STCV21672 (Cal. Super. Ct., L.A. Cnty. Apr. 17, 2025).......................14, 15, 16

11

12

*Gabrielli v. Insider, Inc.*,
   No. 24-cv-01566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ....................................11

13

*In re Google, Inc. Privacy Policy Litig.*,
   58 F.Supp.3d 968 (N.D. Cal. 2014) .................................................................................8

14

*Hammerling v. Google, LLC*,
   No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024)...............................................20

15

16

*Khamooshi v. Politico LLC*,
   No. 24-cv-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)...............................11

17

*Kishnani v. Royal Caribbean Cruises Ltd.*,
   No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025)......................11, 16

18

19

*Love v. Ladder Fin., Inc.*,
   No. 23-cv-04234-VC, 2024 WL 2104497, . (N.D. Cal. May 8, 2024).............................19

20

*Matera v. Google Inc.*,
   No. 15-cv-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)...........................19

21

*McCoy v. Alphabet, Inc.*,
   No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021)...............................19

22

23

*McDonald v. Wells Fargo Bank, N.A.*,
   No. 13-cv-02334-KAW, 2013 WL 6512881 (N.D. Cal. Dec. 12, 2013).........................8

24

25

*Mitchener v. CuriosityStream, Inc.*,
  No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ........................11, 16, 17

*Nabozny v. Optio Sols. LLC*,
  84 F.4th 731 (7th Cir. 2023) ...................................................................................................9

*Oganyan v. Biolife Plasma Servs. L.P.*,
  No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) ......................11

*Palacios v. Fandom, Inc.*,
  No. 24STCV11264, 2024 WL 5494527 (Cal. Super. Ct., L.A. Cnty. Sept. 24,
  2024) ....................................................................................................................... *passim*

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025) ......................................................................................... *passim*

*Price v. Headspace, Inc.*,
  No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Ct., L.A. Cnty. Apr. 1,
  2025) .......................................................................................................................................16

*Rodriguez v. Culligan Int'l Co.*,
  No. 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ......................10, 11

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
  No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)....................19, 21

*Sanchez v. Cars.com Inc.*,
  No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct., L.A. Cnty. Jan. 27,
  2025) .................................................................................................................................17, 18

*Scharon v. Paramount Global*,
  No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Ct., L.A. Cnty. Oct. 03,
  2025) .......................................................................................................................................18

*Smith v. Facebook, Inc.*,
  745 F.App'x 8 (9th Cir. 2018) ......................................................................................20, 21

*Spokeo* v. *Robins*,
  578 U.S. 330 (2016)...................................................................................................................8

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)............................................................................................................7, 8, 9

**Constitutions**

U.S. Const., Art. III.............................................................................................2, 7, 9, 11

**Statutes**

18 U.S.C. § 3121 ....................................................................................................................17

Cal. Civ. Proc. Code § 340(a) ............................................................................... 6

Cal. Penal Code § 638.50 ............................................................................. *passim*

Cal. Penal Code § 638.51 ............................................................................. *passim*

Cal. Penal Code § 638.52 ................................................................................. 17

**Court Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................... 3, 7, 11, 21

Fed. R. Civ. P. 12(b)(6) ............................................................................. *passim*

Fed. R. Evid. 201 ............................................................................................ 8

**Other Authorities**

Assembly Bill 929, 2015 Cal. Legis. Serv. Ch. 204 .................................... 17

*Hearing on AB 929 Before the Assembly Comm. on Pub. Safety* (Apr. 7, 2015),
    http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-
    0950/ab_929_cfa_20150406_093935_asm_comm.html ....................... 18

Restatement (Second) of Torts § 652B cmt. ............................................... 9

Defendant The Procter & Gamble Company ("P&G"), through its attorneys, respectfully moves the Court for an order under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure dismissing Plaintiff Monica Dawkins ("Plaintiff")'s Complaint.

## I. **INTRODUCTION**

P&G is one of the world's largest consumer goods companies and serves billions of consumers worldwide.  As part of its customer engagement system and marketing, P&G operates consumer-facing websites for its brands, including https://ivory.com/ (the "Website").  As Plaintiff expressly alleges in her Complaint, all P&G websites are governed by P&G's global consumer privacy policy ("Privacy Policy").  That Privacy Policy robustly and expressly discloses the fact that, unless a visitor opts out, the Website will embed certain tracking technologies ("Tracking Technologies," which the Complaint calls "Trackers") on the visitor's browser that may collect metadata associated with the browser, including the IP address the visitor uses.

Now, Plaintiff is attempting to distort a California criminal statute regarding phonetapping—California Penal Code § 638.51 ("Section 638.51")—to hold P&G civilly liable for merely operating a Website which Plaintiff visited.  If Plaintiff's theory were adopted, it would criminalize the operation of any Website on the internet.  This is because P&G's Website operates like every other website: it receives certain address information from visitors (an IP address) where the Website must deliver files in order to load.  Plaintiff alleges that because the Tracking Technologies collect her IP address (as the Privacy Policy discloses) and other communication metadata, the Tracking Technologies are either "pen registers" or "trap and trace devices" under California law.  Specifically, Plaintiff alleges that the Tracking Technologies must be pen registers or trap and trace devices because they record or capture certain "routing, addressing, or signaling information" from Plaintiff's browser.  Cal. Penal Code § 638.50(b), (c).  In short, Plaintiff argues

that P&G should be liable for its disclosed and consented-to use of technologies which collect information that Plaintiff voluntarily disclosed to P&G by virtue of her visiting the Website.

This Court should reject Plaintiff's attempt to criminalize routine website visits and dismiss the Complaint for at least the following three reasons:

***First***, the Complaint should be dismissed because Plaintiff lacks a concrete injury and therefore lacks Article III standing.  Under binding Ninth Circuit precedent, to rise to the level of a concrete injury, Plaintiff must allege harms analogous to specific torts at common law that involve collection or disclosure that is "highly offensive."  *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).  The information allegedly collected or disclosed by the Tracking Technologies—such as "screen resolution," "timezone," and "installed fonts"—are, as a matter of law, not such "highly offensive" information, as courts have recognized.  Indeed, the public IP address that Plaintiff relies upon most heavily as an example of personal information is just as its name suggests: public.  Such information cannot be the subject of a concrete injury sufficient for Article III standing.

***Second***, the Complaint should be dismissed because the Tracking Technologies as alleged are neither pen registers nor trap and trace devices under California law.  Plaintiff alleges that the Tracking Technologies are installed on her device and collect address information about the Plaintiff's own device.  But under the California statute, a trap and trace device collects the phone numbers ***originating incoming*** communications to the attached device, and a pen register collects the ***outgoing destination*** phone numbers the attached device communicates with.  The statute plainly does not prohibit a party from using a device that only collects information about where it is installed.  Moreover, and in any event, Plaintiff alleges that the Tracking Technologies also collect the content of electronic communications on the web (the URLs that a browser requests)— which excludes them from the definition of both pen register and trap trace device by the express

language of the statute.  And fundamentally, as the surrounding statutory sections evidence, Section 638.51 claims are inapplicable where the alleged communications are not telephonic.

*Finally*, the Complaint should be dismissed because Plaintiff consented to the installation and use of any purported pen registers or trap and trace devices through the Website's Privacy Policy.  It is undisputed that all of the alleged behavior of the Tracking Technologies are disclosed in the Privacy Policy, which is subject to one reasonable interpretation.  This alone is sufficient for Plaintiff to consent to the installation and use of the Tracking Technologies, but the Privacy Policy goes even further in informing Plaintiff of her ability to opt out of the Tracking Technology behaviors at issue.  Plaintiff cannot simultaneously admit that her visits to the Website are governed by the Privacy Policy yet disclaim the consequences of the Privacy Policy for this litigation.

For these reasons and as explained more fully below, the Court should dismiss the entirety of the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of standing or dismiss the Complaint with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II.    BACKGROUND

### A.    The Website and P&G's Privacy Policy

P&G is one of the world's largest consumer goods companies and serves billions of consumers worldwide.  *See* Compl. ¶ 18.  P&G, for its brand Ivory, operates the website https://ivory.com (the "Website").  *See* Compl. ¶ 1.  Beyond delivering information about Ivory products, the Website provides visitors with information on promotions and company values, allows users to connect with customer support, and enables "access [to] broader P&G resources." Compl. ¶ 20.  The Website is one website of many operated by P&G as part of its "broader marketing and customer engagement systems."  Compl. ¶ 21.

1    As the Complaint alleges, visitor interactions with the Website are governed by P&G's

2    global consumer privacy policy, also applicable to other P&G websites (the "Privacy Policy").

3    *See* Compl. ¶ 21.  Although the Complaint expressly alleges that P&G's collection of consumer

4    data and tracking of user interactions is done "under the Global Consumer Privacy Policy," it fails

5    to attach a copy of the Privacy Policy.  Compl. ¶ 21.  Copies of P&G's current Privacy Policy and

6    the version of the Privacy Policy in effect one year prior to the Complaint are attached to the

7    Declaration of James M. Brennan ("Brennan Decl.").  *See* Brennan Decl. ¶¶ 5–7 & Ex. 3–4.  As

8    explained *infra* Section IV.C, the Privacy Policy is subject to judicial notice.

9    P&G's Privacy Policy is a document which robustly discloses the technologies on the

10   Website and what data P&G and other third parties may collect.  As relevant to this litigation, the

11   Privacy Policy explains to a visitor in plain language that P&G "may use technologies that

12   automatically collect information when you visit our sites," and that this information may include,

13   for example, "what browser and operating system you are using, your IP address, and about your

14   online activities such as web pages you visit."  *See* Brennan Decl., Ex. 3 at 8 (under topic "How

15   We Gather & Use Personal Data: You Interact with Websites & Emails"); *see also id.* at 17–19

16   ("Types of Personal Data We Collect: What We Typically Collect").  The Privacy Policy even

17   identifies pixels and web beacons as specific technologies that may be used to collect information.

18   *Id.* at 14 ("Pixels: These are small objects embedded into a web page but are not visible.  They are

19   also known as 'tags,' 'web bugs,' or 'pixel gifs.'  We may use pixels to deliver cookies to your

20   computer, monitor our website activity, make logging into our sites easier, and for online

21   marketing activities."); *id.* at 18 (listing "first party cookies, third party cookies, web beacons, clear

22   gifs and pixel tags.").

23   Beyond explaining what data P&G may collect from visitors, the Privacy Policy also makes

24   clear how that data may be disclosed to third parties unless a visitor opts out.  *See, e.g., id.* at 3

("Do we disclose your personal data to third-party partners? Yes, where we have a lawful basis to do so. . . . Do we give you control of your personal data? Yes."). Google and Meta are specifically named as examples of online platforms with whom P&G may share "identifiers." *Id.* at 4. "Online Platforms and Ad Tech Companies" may receive "contact information, unique identifiers, inferred and derived information, online and technical information and geolocation data." *Id.* at 16. These potential disclosures are subject to visitor opt-out rights, as detailed in the Privacy Policy. *See, e.g.*, *id.* at 26–41 (notice of rights under California Consumer Privacy Act, including "Do Not Sell/Share/Target"); *id.* at 4–6 (explaining opt-out rights for cookies and interest-based advertising); *id.* at 14 ("You may opt out of Google Analytics at any time").

### B.    Internet Background and the Alleged Tracking Technologies

When a person visits any website, the visitor's browser makes a request of the computer that hosts the website, and that server responds with files. *See* Compl. ¶ 37. Specifically, what the user's browser "requests" is the content of a URL (or URI) like https://ivory.com, but the request can include other information in its "header." *See* Compl. ¶¶ 37, 156 & fig. 12 (sample of request to facebook.com URL). The requests made by the visitor's browser are called HTTPS requests, or more specifically GET requests and POST requests; the responses by the server are HTTPS responses. *See* Compl. ¶¶ 37, 39, 41. When websites are hosted on the Internet (like the Website here), every request and response must be sent to an Internet Protocol ("IP") address. *See, e.g.*, Compl. ¶ 44 ("An IP address is essential for identifying a device on the internet."), ¶ 81 ("These requests include the user's IP address, which is transmitted automatically as part of the HTTP request header."). The files that a website server provides in response to a request can include markup files that make the visual appearance of the website, text files known as cookies, and pixel and web beacon scripts that the Complaint refers to as "Trackers." *See* Compl. ¶¶ 4–7, 38.

1   Plaintiff alleges that the Website's HTTPS responses cause Tracking Technologies

2   operated by three third parties—Google, Meta, and Tapad—to be installed on Plaintiff's browser.

3   *See* Compl. ¶¶ 6–8; *see also, e.g.*, Compl. ¶ 70.[1]   Allegedly, each Tracking Technology transmits

4   to the respective third party the "users' IP addresses, ***full page URLs, referrer headers***,

5   timestamps, user-agent/device characteristics, and persistent identifiers."  Compl. ¶ 142 (Google;

6   emphasis supplied); *see also id.* ¶ 154 (Meta), ¶ 167 (Tapad).   The way that these Tracking

7   Technologies allegedly transmit this information to the Tracking Technology operator is through

8   the user's browser making another HTTPS request to the Tracking Technology operator's server.

9   *See* Compl. ¶¶ 143–44 (Google), ¶¶ 155–156 (Meta), ¶¶ 169–170 (Tapad).   In other words,

10  Plaintiff alleges that the same information contained in the communications with the Website

11  through HTTPS responses and requests—URLs and headers—are transmitted to the operators of

12  the Tracking Technologies.

13  ### C.   Plaintiff's Alleged Website Visit and Alleged Harms

14  The Complaint alleges that Plaintiff is a citizen of the State of California residing in Tulare

15  County.  Compl. ¶ 16.  Plaintiff allegedly visited the Website sometime between September 29,

16  2024 and September 29, 2025.  *See* Compl. ¶ 16 (Plaintiff visited "during the class period"), ¶ 180

17  (class period as "the relevant statute of limitations period"); *see* Cal. Civ. Proc. Code § 340(a)

18  (one-year statute of limitations).

19  Plaintiff does not allege any specific information that was recorded, transmitted, or

20  disclosed because of her visit to the Website that invaded her privacy.  *See generally* Compl.

21  Instead, the Complaint asserts that "[g]eneralized references [] to users, visitors and consumers

22

23  ---
[1] The Complaint contains occasional inconsistent allegations that the Tracking Technologies are

24  "install[ed]" on the Website instead of Plaintiff's browser.  *See, e.g.*, Compl. ¶ 2.  As explained *infra* Section
    IV.B.1, this variance is immaterial.

expressly include Plaintiff."  Compl. ¶ 15.  These "generalized references" include the alleged harms to Website visitors.  Plaintiff alleges that the "collection of IP addresses" "cause harm in and of itself" because it allows data brokers to "track behaviour across devices and target the user [] with ads."  Compl. ¶¶ 63–64.  Plaintiff also alleges that the Tracking Technologies and their operators (like Google) collect IP addresses and other information that allow for "digital fingerprinting" which "can contribute to broader profiling of a user's interests, affiliations, or behaviors."  Compl. ¶ 76.  These digital fingerprint profiles can be sold to facilitate more valuable, targeted advertising.  *See* Compl. ¶¶ 109–115.  Plaintiff alleges that if, "sufficiently detailed," a digital fingerprint profile "can enable the reidentification of a user" "especially when correlated with other identifiers such as email. addresses, form submissions, or third-party databases."  Compl. ¶ 77.  Similarly, Plaintiff alleges these digital fingerprints can then be used with ***other information*** in ***another process*** known as identity resolution done by ***other persons*** to "recogniz[e] users across sessions, devices, and platforms."  *See* Compl. ¶ 78.  Plaintiff does not allege that she opted out of data collection or sharing under the Privacy Policy.  *See generally* Compl. ¶ 21.

## III.  <u>LEGAL STANDARD</u>

Under Rule 12(b)(1), a party may move to dismiss a cause of action for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The party invoking federal court jurisdiction bears the burden to establish that it has standing under Article III of the Constitution.  *See Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021)).  To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion*, 594 U.S at 423.  For an injury in fact to be concrete, the alleged injury must have a

1  "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in

2  American courts." *TransUnion*, 594 U.S at 424 (quoting *Spokeo* v. *Robins*, 578 U.S. 330, 341

3  (2016)); *see also Popa*, 153 F.4th at 789.

4        Under Rule 12(b)(6), a party may move to dismiss a cause of action for failure to state a

5  claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss,

6  a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

7  is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

8  *Twombly*, 550 U.S. 544, 570 (2007)).  Courts, however, "need not accept as true allegations that

9  are conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Google, Inc.*

10  *Privacy Policy Litig.*, 58 F.Supp.3d 968, 977 (N.D. Cal. 2014) (dismissing invasion of privacy

11  claim).  "The court need not accept as true allegations that contradict facts which may be judicially

12  noticed." *McDonald v. Wells Fargo Bank, N.A.*, No. 13-cv-02334-KAW, 2013 WL 6512881, at

13  *3 (N.D. Cal. Dec. 12, 2013) (citation omitted) (dismissing complaint with prejudice).

14        "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

15  than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that

16  are 'merely consistent with' a defendant's liability, it stops short of the line between possibility

17  and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at

18  556).  On a motion to dismiss, a court may consider material outside the complaint if "the material

19  [1] is incorporated into the complaint by reference or [2] is subject to judicial notice under Federal

20  Rule of Evidence 201." *A.S. v. SelectQuote Ins. Servs.*, No. 3:23-cv-02258-RBM-MSB, 2024 WL

21  3881850, at *3–4 (S.D. Cal. Aug. 19, 2024) (considering privacy policy on defendant's website as

22  incorporated by reference and subject to judicial notice).

23

24

25

## IV.  __ARGUMENT__

### A.  **The Complaint Should Be Dismissed Because Plaintiff Has Not Suffered a Concrete Injury and Thus Lacks Article III Standing.**

The Complaint should be dismissed for lack of Article III standing because, as alleged, Plaintiff has not suffered a concrete injury.

The Ninth Circuit's August 2025 decision in *Popa v. Microsoft* is on-point and dispositive. 153 F.4th 784 (9th Cir. 2025) (affirming dismissal for lack of Article III standing).  In *Popa*, the plaintiff alleged that a website operator violated Pennsylvania's wiretap statute by installing "tracking software" on the website that captured the plaintiff's interactions with the website.  *Id.* at 787, 791.  The Ninth Circuit affirmed the dismissal of the Complaint for lack of standing and lack of concrete injury.  *Id.* at 792–95.  The Ninth Circuit rejected the argument that "that a plaintiff *necessarily* enjoys Article III standing when suing under a statute that protects a substantive right to privacy."  *Id.* at 792–93.  The Court also rejected the argument that the plaintiff had suffered a concrete injury because of an alleged violation of a "free-roaming privacy right" "pitched at a high level of generality."  *Id.* at 792.  Instead, citing another circuit's application of the Supreme Court's traditional harm test from *TransUnion*, the Court concluded that a plaintiff could only suffer a concrete injury if the harm is similar to either of four common law privacy torts: "intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light."  *Id.* at 792 (quoting *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023)).

Applying this test to the complaint in *Popa*, the Ninth Circuit noted that the two torts of intrusion upon seclusion and public disclosure of private facts (the only privacy torts raised by the plaintiff) both required a "highly offensive" interference of privacy or disclosure of facts.  *Id.*  at 791.  Examples of highly offensive intrusions at common law included "taking intimate pictures [of plaintiff] with a telescopic lens."  *Id.* (citing Restatement (Second) of Torts § 652B cmt. b,

1    illus. 2).  Comparing to the harm alleged, the Court concluded that the alleged conduct—tracking

2    of website interactions—did not involve the collection of any "embarrassing, invasive, or

3    otherwise private information" sufficient for a concrete injury.  *Id.*  "Indeed, the monitoring of

4    [plaintiff's] interactions with [defendant's] website seems most similar to a store clerk's observing

5    shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt

6    potential sales."  *Id.*

7          The same result should obtain here.  The injury to Plaintiff from P&G's alleged violation

8    of Section 638.51 is the "record[ing]" or "captur[ing]" of certain "dialing, routing, addressing, or

9    signaling information."  Cal. Penal Code § 638.50(b), (c).  Address information is not "highly

10   offensive" like an intimate photograph.  *See Popa*, 153 F.4th at 791.  For example, one specific

11   address information Plaintiff spends much time focusing on is her IP address.  *See, e.g.*, Compl.

12   ¶¶ 52, 54.  But Plaintiff's own allegations admit that IP addresses are "like the number for a

13   landline telephone," Compl. ¶ 49, and that an IP address is automatically disclosed, *i.e.* no longer

14   private, whenever any device visits any website on the Internet, *see* Compl ¶¶ 45, 81.  *See generally*

15   *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225-AJB-KSC, 2025 WL 3064113, at *4 (S.D. Cal.

16   Nov. 3, 2025) ("Courts have consistently held that internet users have no expectation of privacy in

17   their IP addresses.").  The other alleged address information that the Tracking Technologies

18   collect—including "screen resolution," "timezone," and "installed fonts"—are even further from

19   the "highly offensive" information that could be analogous to a historical harm.  Compl. ¶ 10; *see,*

20   *e.g.*, *Rodriguez v. Culligan*, 2025 WL 3064113, at *5 ("Courts have similarly concluded that

21   internet users have no right to privacy in the metadata of their communication.").  Tellingly, only

22   a "sufficiently detailed" fingerprint "can enable the reidentification of a user," and may require

23   correlation with identifiers from other sources.  *See* Compl. ¶ 77.

24

25

DEFENDANT'S NOTICE OF MOTION
& MOTION TO DISMISS
1:25-cv-01287-JLT-HBK

1    Federal courts addressing Section 638.51 claims with similar or identical technology have

2    similarly ordered dismissals for a plaintiff's lack of concrete injury.  For example, in *Rodriguez v.*

3    *Culligan*, the plaintiff alleged that defendant's website installed "tracking beacons" on her browser

4    which collected her "unique [internet protocol ("IP")] address, ... operating system name, operating

5    system version number, browser name, browser version number, browser language, screen

6    resolution, geolocation data, email address, mobile ad IDs, embedded social media identities,

7    customer and/or loyalty IDs, cookies and device signature—as well as the connections between

8    them." 2025 WL 3064113, at *1.  The court granted the defendant's Rule 12(b)(1) motion, noting

9    that the alleged injury was not analogized to any privacy harm at common law and that "Internet

10   users also have no expectation of privacy in the other data that [defendant] allegedly collects." *Id.*

11   at *5; *see also, e.g.*, *Oganyan v. Biolife Plasma Servs. L.P.*, No. 1:25-cv-00099-KES-SKO, 2025

12   WL 2979619, at *4 (E.D. Cal. Oct. 22, 2025) (no Article III standing for "third-party trackers [that]

13   have the capability to use [] pieces of information to engage in ID bridging"); *Gabrielli v. Insider,*

14   *Inc.*, No. 24-cv-01566, 2025 WL 522515, at *9 (S.D.N.Y. Feb. 18, 2025) (dismissal with prejudice

15   for lack of concrete injury); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW,

16   2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (dismissing Section 638.51 claim involving

17   digital "fingerprints" for lack of standing); *Mitchener v. CuriosityStream, Inc.,* No. 25-cv-01471-

18   NW, 2025 WL 2272413, at *6 (N.D. Cal. Aug. 6, 2025) (same; dismissal with prejudice);

19   *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 2822879, at *4 (N.D. Cal. Oct. 2,

20   2025) (same).

21   Because Plaintiff's alleged injury is not concrete, the Court should dismiss the Complaint

22   under Federal Rule of Civil Procedure 12(b)(1).

23

24

25

DEFENDANT'S NOTICE OF MOTION
& MOTION TO DISMISS
1:25-cv-01287-JLT-HBK

**B. The Tracking Technologies as Alleged Do Not Meet the Definition of Pen Registers or Trap and Trace Devices.**

Plaintiff's Section 638.51 claim independently should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because the Tracking Technologies as alleged do not meet the statutory definition for either a pen register or a trap and trace device. *See* Cal. Penal Code § 638.50. As addressed *infra* in this Section IV.B, the Tracking Technologies do not meet three elements of the definitions, any one of which is fatal to Plaintiff's claim: **(1)** the Tracking Technologies do not collect origin address information for incoming communications or destination address information for outgoing communications; **(2)** the Tracking Technologies allegedly collect the contents of communications; and **(3)** pen registers and trap and trace devices are applicable only to telephonic communications, not internet browsing.

**1. The Tracking Technologies Are Not Pen Registers nor Trap and Trace Devices Because They Do Not Collect the Origin Address Information for Incoming Communications or Destination Address Information for Outgoing Communications.**

Plaintiff's Section 638.51 claim should be dismissed for the independent and sufficient reason that the Tracking Technologies as alleged do not record or capture the origin address information for communications incoming to Plaintiff's device or the destination address information of communications from Plaintiff's device. Instead, Plaintiff alleges that the Tracking Technologies collect address information for Plaintiff's own device, which is not prohibited by Section 638.51. *See Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Ct., L.A. Cnty. Sept. 24, 2024) (sustaining demurrer to Section 638.51 on this basis).

Plaintiff alleges that the Tracking Technologies are pen registers "and/or" trap and trace devices, *see, e.g.*, Compl. ¶ 3, but these statutory definitions are not interchangeable. A pen register is a device that "records *[address] information transmitted by an instrument* . . . from which a wire or electronic communication is transmitted, but not the contents of a

communication." Cal. Penal Code § 638.50(b) (emphasis supplied). A trap and trace device is defined as a device that "captures the *incoming [address] information* reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c) (emphasis supplied).

A device that only records the address information of the device on which it is installed (without recording the destination of the device's outgoing communications or the origin of the device's incoming communications) is neither a pen register nor a trap and trace device. *See Palacios*, 2024 WL 5494527, at *3 (dismissing Section 638.51 claim and holding that "[t]he analog of the number dialed by a telephone here is the IP address and related information of a website accessed by a computer – but not the computer's own IP address."). Further, a person cannot be liable for installing a pen register or trap and trace device on their own device. *See Aviles v. LiveRamp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *3 (Cal. Super. Ct., L.A. Cnty. Jan. 28, 2025) (sustaining demurrer of Section 638.51 claim; "Plaintiff at most alleges that Defendant's Website collects the IP addresses and other information of visitors incoming to the website - the equivalent of if Defendant had used a trap and trace device on its *own* website, rather than on Plaintiff's device."); *see also* Cal. Penal Code § 638.51(b)(5) (consent a defense to liability).

To illustrate with phone numbers, say there is a device attached to a person ("Jenny")'s phone line with the number 867-5309. If that device recorded other phone numbers that Jenny dialed out from 867-5309, it would be a pen register under California law. *See* Cal. Penal Code § 638.50(b). Conversely, if the device captured the phone numbers of other people who dialed Jenny at 867-5309, it would be a trap and trace device under California law. *See* Cal. Penal Code § 638.50(c). However, as California precedent makes clear, a device on Jenny's phone that only tracks the fact that Jenny's phone number was 867-5309, without tracking the numbers that called Jenny or destination of Jenny's calls, would be neither a pen register nor a trap and trace device.

1   *See Palacios*, 2024 WL 5494527, at *3.  And, under California precedent, Jenny cannot be liable

2   for installing a device on her own phone that captures the numbers for incoming calls or records

3   numbers for outcoming calls.  *See, e.g.*, Brennan Decl., Ex. 5, Order at 3, *Camacho v. DG Premium*

4   *Brands LLC*, No. 24STCV21672 (Cal. Super. Ct., L.A. Cnty. Apr. 17, 2025) (sustaining demurrer

5   to Section 638.51 claim; "[I]f section 638.51 was as broad as Plaintiff contends, it would prohibit

6   phones from revealing the phone number of the person calling those phones (in other words every

7   cell phone in use today).").

8       Plaintiff primarily alleges that P&G installed the Tracking Technologies on Plaintiff's

9   device.  *See, e.g.*, Compl. ¶ 70 ("Defendant installs the Trackers onto the user's browser.").

10  However, Plaintiff inconsistently alleges that that the Tracking Technologies are installed on

11  P&G's Website.  *See, e.g.*, Compl. ¶ 2.  In any event, the only "communications" with alleged

12  address information are the "electronic communications" of Plaintiff's visits to P&G's own

13  Website.  *See, e.g.*, Compl. ¶¶ 142, 154, 167 ("Tracker thus functions as a pen register and/or trap-

14  and-trace device by capturing addressing and signaling information tied to users' communications

15  with the Website."); *id.* ¶¶ 148, 161, 174 ("electronic communications between the user and the

16  Website").  From those "communications," the only associated address information that Plaintiff

17  puts at issue is the address information from Plaintiff's own device.  *See, e.g.*, Compl. ¶ 10

18  ("Through the Trackers, Third Parties collect a wide range of routing, addressing, and signaling

19  information from users' browsers and devices.").

20      Assuming that the Tracking Technologies are installed on Plaintiff's browser (as most

21  consistently alleged), there can be no liability under Section 638.51 for the recording of Plaintiff's

22  own device information.  Because there are no allegations that the Tracking Technologies record

23  the address information for ***the origin of communications incoming to Plaintiff's device*** (such as

24  phone numbers or IP addresses contacting Plaintiff), the Tracking Technologies are not pen

1  registers.  Because there are no allegations that the Tracking Technologies collect address

2  information for *the destination of communications from Plaintiff's device* (such as the phone

3  numbers or IP addresses that Plaintiff dialed or visited), the Tracking Technologies are not trap

4  and trace devices.  Thus, the Section 638.51 claim should be dismissed.  *See Palacios*, 2024 WL

5  5494527, at *3 (sustaining demurrer because alleged information collected by device on plaintiff's

6  computer was plaintiff's own address information).

7         Nor can P&G be liable for installing Tracking Technologies on the Website (as less

8  frequently alleged in the Complaint, *see, e.g.*, Compl. ¶¶ 2, 153, 182) that capture the address

9  information for Plaintiff's device.  This would be equivalent to an argument that P&G can be held

10 liable for capturing the address information of persons that communicate with P&G.  Indeed, this

11 argument would make P&G liable for sending responses to any person, because P&G would need

12 to capture the address information in order to do so.  Such an argument is non-sensical, and indeed

13 California courts have dismissed Section 638.51 claims raising this theory.  *See, e.g.*, Brennan

14 Decl. Ex. 5, Order at 3, *Camacho v. DG Premium Brands* ("The statute does not prohibit a

15 defendant from collecting identifying information about who the defendant is communicating with

16 and who is communicating with the defendant.  Obviously, when a person goes on a website to

17 make a purchase, the website needs to know who that person is.  Also if section 638.51 was as

18 broad as Plaintiff contends, it would prohibit phones from revealing the phone number of the

19 person calling those phones (in other words every cell phone in use today)."); *Aviles v. LiveRamp*,

20 2025 WL 487196, at *3 ("Plaintiff at most alleges that Defendant's Website collects the IP

21 addresses and other information of visitors incoming to the website - the equivalent of if Defendant

22 had used a trap and trace device on its *own* website, rather than on Plaintiff's device.").

23        For these reasons, because the Tracking Technologies as alleged do not record or capture

24 the origin address information for communications incoming to Plaintiff's device or the destination

address information of communications from Plaintiff's device, the Complaint should be dismissed. *See, e.g.*, Brennan Decl., Ex. 5, Order at 3–4, *Camacho v. DG Premium* (sustaining demurrer); *Palacios*, 2024 WL 5494527, at *3 (same); *Aviles*, 2025 WL 487196, at *3 (same).

> **2. The Tracking Technologies Are Not Pen Registers nor Trap and Trace Devices Because They Allegedly Collect Contents of Communications.**

Plaintiff's Section 638.51 claim should be dismissed for the independent and sufficient reason that the Tracking Technologies allegedly collect the contents of communications.

The only "communications" at issue in this case are "electronic communications" of Plaintiff's visits to P&G's Website. *See, e.g.*, Compl. ¶¶ 148, 161, 174 ("electronic communications between the user and the Website"). As described further *supra* Section II.B, Plaintiff's communications with the Website are in the form of HTTPS requests. *See, e.g.*, Compl. ¶ 37. The content of HTTPS requests are URLs and header information. *See, e.g.*, Compl. ¶ 156. Plaintiff's Complaint alleges that the Tracking Technologies collect or record that exact same information. *See, e.g.*, Compl. ¶ 11 ("Trackers capture and transmit users' IP addresses, full page URLs, referrer headers, device identifiers, and other categories of User Information.").

The definitions of both pen register and trap and trace device specify that the device records or collects certain address information "but not the contents of a communication." *See* Cal. Penal Code § 638.50(b), (c). Courts have dismissed Section 638.51 claims where the alleged devices collect the contents of the communications. *See Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Ct., L.A. Cnty. Apr. 1, 2025) ("To put this yet another way, if the device is capturing the content of the communications, it is definitionally not a trap and trace device. For this reason, the demurrer will be sustained."); *Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471-NW, 2025 WL 2272413, at *6 (N.D. Cal. Aug. 6, 2025) (dismissing complaint with prejudice); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (same).

The Tracking Technologies as alleged collect or record URLs and header information, which are the contents of the alleged communications. Because the Tracking Technologies allegedly collect or record the contents of communications, they are not pen registers nor trap and trace devices by definition. This Court should thus dismiss Plaintiff's Complaint with prejudice. *See, e.g.*, *Mitchener v. CuriosityStream*, 2025 WL 2272413, at *5 (dismissing complaint with prejudice).

### 3. Section 638.51 Applies Only to Telephonic Wire or Electronic Communications.

Plaintiff's Section 638.51 claim should be dismissed for the independent and sufficient reason that the language of Cal. Penal Code §§ 638.50–.53 demonstrates that Section 638.51 is applicable only to telephonic communications. "The California legislature enacted Assembly Bill 929, the genesis of CIPA section 638.51, in 2015 to create a comprehensive framework governing how California law enforcement officials could obtain and use a pen register or trap and trace device, just like its federal counterpart [18 U.S.C. § 3121]." *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct., L.A. Cnty. Jan. 27, 2025) (dismissing Section 638.51 claim on basis that Section 638.51 is applicable to telephone communications, not web browsing); *see also* Assembly Bill 929, 2015 Cal. Legis. Serv. Ch. 204 (West). In the section specifying how a court order can authorize installation of a pen register or trap and trace device, multiple provisions make clear that a pen register or trap and trace device ***can only be attached to a telephone line and number***; *see* Cal. Penal Code § 638.52(d)(1) (order must specify "the person . . . whose name is listed the telephone line to which the pen register or trap and trace device is to be attached"); § 638.52(d)(3) ("The number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached."). In other words, under the plain language of the statute, it is non-sensical to say that a web browser—as alleged in the Complaint—can have a pen register or trap and trace device installed on it.

1    Moreover, the legislative history has other indicia that a pen register or a trap and trace

2    device is only applicable to telephone lines and numbers.  The author's statement accompanying

3    the bill describes pen registers as allowing law enforcement "to record all outgoing numbers from

4    *a particular telephone line*," and describes a trap and trace device as "allow[ing] them to record

5    what numbers have called a *specific telephone line*, *i.e.* all incoming **phone numbers**."  *See*

6    *Hearing on AB 929 Before the Assembly Comm. on Pub. Safety* at 5 (Apr. 7, 2015),

7    http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-

8    0950/ab_929_cfa_20150406_093935_asm_comm.html (emphases supplied).

9    Many courts that have considered the statute's language referring to telephone lines and

10   telephone numbers have concluded that technologies that track web browsing activity cannot be

11   pen registers or trap and trace devices, and dismissed claims under Section 638.51.  *See Sanchez*

12   *v. Cars.com*, 2025 WL 487194, at *3 (sustaining demurrer without leave to amend; "'[P]en

13   register' and 'tra[p] and trace devices' refer to devices or processes that are used to record or

14   decode dialing, routing, addressing, or signaling information from telephone numbers, and not

15   internet communications such as websites."); *Scharon v. Paramount Global*, No. 25STCV10585,

16   2025 WL 2996812, at *1 (Cal. Super. Ct., L.A. Cnty. Oct. 03, 2025) (sustaining demurrer without

17   leave to amend; "section 638.51 applies to telephone lines, not websites, because websites do not

18   have lines, physical locations, or numbers.").  For the same reason, this Court should dismiss the

19   Complaint with prejudice.  *See id.*

20   **C.    Plaintiff's Claim for Violation of Section 638.51 Fails Because Plaintiff Consented to the Privacy Policy, Which Discloses the Tracking Technologies.**

21   Under California law, there is no liability for a violation of Section 638.51 where the user

22   consented to the installation or use of the pen register or trap and trace device.  *See* Cal. Penal

23   Code § 638.51(b)(5).  Plaintiff repeatedly states that the Tracking Technologies were installed

24   without consent (*see, e.g.*, Compl. ¶ 13), but "the court need not accept as true allegations that

contradict matters properly subject to judicial notice or by exhibit." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168, at *5 (C.D. Cal. Feb. 27, 2025) (internal quotations omitted) (dismissing Cal. Penal Code § 631 claim because "Plaintiff's recognition that the Website collected her information is sufficient to provide constructive notice of the Privacy Policy, such that Plaintiff had inquiry notice upon visiting the Website."). Here, Plaintiff's allegations are contradicted by the Privacy Policy, which makes clear that P&G may collect information as alleged unless Plaintiff opted out. *See, e.g.*, Brennan Decl., Ex. 3 at 4–6.

The Privacy Policy is subject to judicial notice on this motion to dismiss because it is incorporated by reference in Paragraph 21 of the Complaint. *See* Compl. ¶ 21 ("Ivory.com functions as a channel for collecting consumer data and tracking user interactions, which P&G uses for personalization and targeted advertising under its Global Consumer Privacy Policy"); *see also, e.g.*, *A.S. v. SelectQuote Ins. Servs.*, No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850, at *3–4 & n.4 (S.D. Cal. Aug. 19, 2024) (considering website privacy policy under incorporation by reference and judicial notice); *Love v. Ladder Fin., Inc.*, No. 23-cv-04234-VC, 2024 WL 2104497, at *2 n.2. (N.D. Cal. May 8, 2024) (considering privacy policy incorporated by reference; dismissing Cal. Penal Code § 631 and common law invasion of privacy claims).[2] Moreover, the Privacy Policy is subject to judicial notice because the Complaint places at issue the alleged "privacy violations" on the Website such that "whether the policy discloses Defendant's use of any tracking tools is critical for establishing Defendant's potential liability." *Saedi*, 2025 WL 1141168, at *4.

---

[2] *See also, e.g.*, *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *2 (N.D. Cal. Feb. 2, 2021) (multiple versions of privacy policy subject to judicial notice where complaint cited policy); *Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 WL 8200619, at *5 (N.D. Cal. Aug. 12, 2016) (archived version of privacy policy subject to judicial notice where privacy policy quoted in complaint).

1    Considering the Privacy Policy, there is no dispute that it discloses every aspect of P&G's

2  alleged "collecting consumer data and tracking user interactions" at issue in the Complaint.

3  Compl. ¶ 21.  The technology alleged to be pen registers or trap and trace devices are "embedded"

4  "small, transparent" "pixel tracker[s]," which are described in the Privacy Policy.  *Compare*

5  Compl. ¶¶ 4–7, *with* Brennan Decl., Ex. 3 at 14 ("Pixels: These are small objects embedded into a

6  web page but are not visible.").    These Tracking Technologies allegedly provide data "to

7  advertisers and data partners for targeted advertising," which the Privacy Policy again discloses.

8  *Compare* Compl. ¶ 12, *with* Brennan Decl., Ex. 3 at 16 ("online platforms and ad tech companies"

9  receive data "to help us serve you relevant advertisements and offers").  The data at issue include

10  "IP addresses, full page URLs, referrer headers, device identifiers, and other categories of User

11  Information," which are the same categories of information identified in the Privacy Policy.

12  *Compare* Compl. ¶ 11, *with* Brennan Decl., Ex. 3 at 18 ("Data elements in this category include

13  IP addresses . . . your device functionality (browser, operating system, hardware, mobile network

14  information) [and] the URL that referred you to our website.").

15    Because the Privacy Policy expressly discloses the alleged practices, Plaintiff consented to

16  them.  *See Smith v. Facebook, Inc.*, 745 F.App'x 8, 9 (9th Cir. 2018) (affirming dismissal of Cal.

17  Penal Code §§ 631 and 632 claims; "[a] reasonable person viewing those disclosures would

18  understand that [defendant] maintains the practices of (a) collecting its users' data from third-party

19  sites and (b) later using the data for advertising purposes.  Knowing authorization of the practice

20  constitutes Plaintiffs' consent."); *cf. Hammerling v. Google, LLC*, No. 22-17024, 2024 WL

21  937247, at *3 (9th Cir. Mar. 5, 2024) (affirming dismissal of common law invasion of privacy

22  because "the Policy here expressly disclosed [defendant's] intention to track [plaintiffs'] activity

23  on third-party apps.").  Further, the Privacy Policy here notified Plaintiff of her right to opt-out of

24

DEFENDANT'S NOTICE OF MOTION
& MOTION TO DISMISS
1:25-cv-01287-JLT-HBK

the alleged practices. *See, e.g.*, Brennan Decl., Ex. 3 at 4–6 (explaining opt-out rights for cookies and interest-based advertising).

Plaintiff cannot simultaneously admit that her visits to the Website are governed by the Privacy Policy yet disclaim the consequences of the Privacy Policy for this litigation. The Privacy Policy accurately disclosed the very conduct that forms the basis of the Complaint, and even gave the opportunity for Plaintiff to opt out of such conduct. *See, e.g.*, Brennan Decl., Ex. 3 at 4–6. Because Plaintiff consented to the installation and use of any pen registers or trap and trace devices through the Privacy Policy, the Complaint should be dismissed with prejudice. *See Smith v. Facebook,* 745 F.App'x at 9 (affirming order granting motion to dismiss); *Saedi*, 2025 WL 1141168, at *10 (dismissing Cal. Penal Code § 631 claim because "Plaintiff's recognition that the Website collected her information is sufficient to provide constructive notice of the Privacy Policy, such that Plaintiff had inquiry notice upon visiting the Website.").

V.    **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the entirety of the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing or dismiss the Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Dated: November 21, 2025                **SQUIRE PATTON BOGGS (US) LLP**
                                        By: */s/ Kristin L. Bryan*
                                        Kristin L. Bryan

                                        *Attorney for Defendant The Procter & Gamble Company*