# Exhibit 5

**FILED**
Superior Court of California
County of Los Angeles

APR 17 2025

David W. Slayton, Executive Officer/Clerk of Court
By: N. Navarro, Deputy

1

2

3

4

5

6

7

8

9

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11               FOR THE COUNTY OF LOS ANGELES

12

13   ISABEL CAMACHO,                          )   Case No.: 24STCV21672
                                              )
14                        Plaintiff,          )
                                              )
     vs.                                      )
15                                            )   ORDER RE DEMURRER AND MOTION TO
     DG PREMIUM BRANDS LLC D/B/A              )   STRIKE
16   DELTA GALIL USA, INC., and DELTA         )
17   GALIL USA, INC. D/B/A                    )
     WWW.7FORALLMANKIND.COM,                  )   Date:   April 17, 2025
18                                            )   Time:   9:00 a.m.
                                              )   Dept.:  SSC 17
19                        Defendants.         )
                                              )
20

21

22

23

24

25

26

27

28

1    Defendants DG Premium Brands LLC and Delta Galil USA, Inc. demurred to Plaintiff

2  Isabel Camacho's First Amended Complaint and moved to strike Plaintiff's prayers for punitive

3  damages and attorney fees.

4  **I.    DEMURRER**

5    The FAC alleges three cause of action: (1) violation of Penal Code section 638.51, (2)

6  violation of Penal Code section 631, and (3) invasion of privacy.

7    **A.    First Cause of Action (Section 638.51)**

8    The first cause of action alleges "Defendants deployed an illegal PR/TT [pen register/trap

9  and trace device] by placing the following Spyware website cookies/beacons on the Plaintiff . . .

10  devices," which allowed Defendants to "access Plaintiff . . . devices, and obtain Plaintiff . . .

11  personal information including, inter alia, Plaintiff's IP address."  (FAC, ¶¶ 96, 97.)

12    Both the pen register statute and trap and trace statute prohibit devices that capture

13  "dialing, routing, addressing, or signaling information."  (Pen. Code, § 638.50, subds. (b), (c).)

14  The legislative history describes a purpose of the statute – to expand the ability of law enforcement

15  to use these devices to determine who a subject of a criminal investigation is calling and is

16  receiving phone calls from.  (See, e.g., June 15, 2015 Assembly Committee Report.)

17    The pen register statute prohibits the use of a device or process that does not discover the

18  contents of the communications, but only transmission information about those communications –

19  for example, the phone numbers called by the subject.  (Pen. Code, § 638.50, subd. (b).)  The trap

20  and trace statute prohibits the use of a device or process that does not discover the content of

21  communications, but only the incoming information about those communications – for example,

22  the phone numbers of calls made to the subject.  (Pen. Code,. § 638.50, subd (c).)  The language,

23  with emphases added, reads: "the *incoming* electronic or other impulses that *identify the*

24  *originating number* or other dialing, routing, addressing, or signaling information reasonably

25  likely to identify the source of a wire or electronic communication. . . "  (Pen. Code, § 638.50,

26  subd. (c).)  This statutory language requires that the device capture outgoing data identifying who

27  the subject is contacting and incoming data identifying who is contacting the subject.

28

1      The FAC alleges that a pen register records "outgoing information" and a trap and trace

2  device records "incoming information." (FAC, ¶ 19.) That is not precisely correct. Those

3  devices, as defined by the statute, only record address or identifying information, not all

4  information being transmitted.

5      Defendants argue this claim fails because section 638.51 applies only to eavesdropping by

6  a third party, and Defendants cannot eavesdrop on its own communications. (Demurrer at pp. 8-

7  9.) Defendants argue Plaintiff "must allege sufficient facts to demonstrate that a defendant's

8  website is in some way violating the law" in a way that does not subject every website to legal

9  violations simply by collecting the information necessary to run a website. (Demurrer at p. 10.)

10  Plaintiff argues the section 638.51 claim is based on Defendants placing "third party spyware on

11  the Website, which each constitute a device or process that records or decodes dialing, routing,

12  addressing, or signaling information (including specifically Plaintiff's IP address amongst other

13  such information) transmitted by Plaintiff's device to the Website." (Opposition at p. 3.)

14      Defendant is somewhat correct. As described above, the statute prohibits a defendant from

15  using a device that records electronic data identifying who the subject is communicating with and

16  who is communicating with the subject. The statute does not prohibit a defendant from collecting

17  identifying information about who the defendant is communicating with and who is

18  communicating with the defendant. Obviously, when a person goes on a website to make a

19  purchase, the website needs to know who that person is. Also if section 638.51 was as broad as

20  Plaintiff contends, it would prohibit phones from revealing the phone number of the person calling

21  those phones (in other words every cell phone in use today).

22      Further, the history of sections 638.50 and 638.51 is helpful in understanding the scope of

23  the statutes. When law enforcement places a pen register or trap and trace device on a subject's

24  phone or other communication device, law enforcement by definition knows who the subject is.

25  The pen register and trap and trace device, as defined by the statute, tell law enforcement what

26  third parties the subject is communicating with. If the subject is communicating with law

27  enforcement, that law enforcement agency does not need those devices to identify the subject.

28  Here, the allegations are not that Defendants were trying to learn who Plaintiff was

1   communicating with or who was communicating with Plaintiff. Rather the allegations are that

2   Defendants used devices to obtain Plaintiff's IP address and other undefined "personal

3   information." (FAC, ¶ 97.) That does not fit the definitions in section 638.50.

4        The demurrer is sustained as to the first cause of action with leave to amend.

5   **B.    Second Cause of Action (Section 631)**

6        The second cause of action alleges Defendants aided and abetted third parties to intercept

7   Plaintiff's communications with Defendants in violation of section 631, subdivision (a)(1). (FAC,

8   ¶¶ 104, 106.)

9        Defendants argue section 631 applies only to eavesdropping by a third party, and

10  Defendants cannot eavesdrop on its own communications. (Demurrer at pp. 8-9.) That is not the

11  point of the second cause of action, which alleges a violation of the fourth part of section 631,

12  subdivision (a).

13       Defendants next argue the FAC does not allege Defendants obtained the contents of

14  Plaintiff's communications. (Demurrer at p. 9.) Section 631, subdivision (a)(1) does not require

15  that a defendant obtain the contents. The fourth part makes it unlawful to aid a third party to read

16  or attempt to read or learn the contents of a plaintiff's communications. The FAC alleges

17  Defendant aided "third party Session Reply code providers, such as HotJar, to intercept

18  components of Plaintiff's . . . private electronic communications and transmissions," and thereby

19  allowed third parties to access Plaintiff's "substantive communications, PII, and other data,"

20  including credit card information. (FAC, ¶¶ 104-106.) This is vague. The allegations do not

21  identify the third parties, except for Hotjar, and do not state which specific third parties accessed

22  what specific types of data. For example, the FAC does not allege that Defendants aided any

23  specific third party in accessing Plaintiff's credit card information.

24       Nor do the allegations about session replay code allege that Defendant allowed third parties

25  to obtain Plaintiff's information. The FAC alleges the Hotjar sessions reply code allowed

26  Defendant "to record individual visitors' sessions, watch them in real-time, and collect and store[]

27  the sessions recordings for watch-back." (FAC, ¶ 64.) The FAC does not allege that Defendant

28  actually sent that information about individual visitors' sessions to any specific third party or

allowed any specific third party to access that information.  If Defendant recorded that information for watch-back later, that does not allege a violation of the fourth part of section 631, subdivision (a)(1).

The demurrer is sustained with leave to amend.

## C.    <u>Third Cause of Action (Invasion of Privacy)</u>

The third cause of action alleges Defendant violated the California Constitutional right to privacy by collecting Plaintiff's personal identifying information, location data, and communications.  (FAC, ¶ 121.)  The elements of a cause of action for violation of the constitutional right to privacy are: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."  (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39-40.)

Defendant argues Plaintiff had no reasonable expectation of privacy of activity on Defendant's website "because she was shopping online."  (Demurrer at p. 11.)  Defendant cites *In re Google Location History Litigation* (N.D. Cal. 2019) 428 F.Supp.3d 185, 198 and *Cousin v. Sharp Healthcare* (S.D. Cal. 2023) 681 F.Supp.3d 1117, 1124.  The court in *Cousin* held that data obtained from browsing activity on a public website did not constitute sensitive health information because the information available on the website was general and publicly available.  (*Cousins, supra,* 681 F.Supp.3d at p. 1123.)  In *Google Location History Litigation*, the court held that the constitutional right of privacy is limited to "bodily autonomy" and did not extend to "geolocation information" collected by the defendant.  (*Google, supra*, 428 F.Supp.3d at p. 198.)

The FAC alleges in vague terms that Defendant allowed third parties to obtain Plaintiff's personal identifying information, location data, and communications.  (See, e.g., FAC, ¶ 121.)  This is too vague and does not allege a serious invasion of privacy.

Plaintiff argues the FAC alleges Defendant allowed third parties to obtain Plaintiff's name, addresses, phone numbers, IP addresses, credit card information, and every other websites Plaintiff used, including healthcare sites she visited.  (Opposition at p. 14.)  Plaintiff points to paragraphs 2, 3, 4, and 49-79 of the FAC.  (*Ibid.*)  These paragraphs allege that various tracking cookies can function in various ways.  These paragraphs do not allege that Defendant allowed or placed

1  tracking cookies that transmitted to third parties information about Plaintiff's name, addresses,

2  phone numbers, IP addresses, credit card information, and every other website Plaintiff used.

3  Instead, the paragraphs vaguely allege the tracking cookies "track[] user sessions," "track user

4  engagement," "collect information on the user's behavior," "track[] individual sessions," "record

5  individual visitor's sessions," "collect[] data on visitor behavior," "record[] and store[] individual

6  visitors' sessions," "harvest[] user data," and "track[] a user's interactions with a website." (FAC,

7  ¶¶ 51, 54, 56, 61, 64, 66, 69, 73, 76.)

8       To the extent Plaintiff is arguing Defendants violated her privacy simply by capturing her

9  information, even if Defendants did not allow third parties to access that information, Plaintiff

10  failed to allege a serious invasion of privacy.  By shopping on a website, Plaintiff had to disclose

11  her information to pay for the product and have it shipped to her.  Plaintiff cites no law that such

12  information in such a context is protected by the California Constitution.

13       The demurrer to the third cause of action is sustained with leave to amend.

14       **D.**   **Class Allegations**

15       Defendant argues Plaintiff's class allegations are boilerplate and do not contain enough

16  specific facts.  (Demurrer at pp. 12-13.)  At the beginning of a case before discovery has occurred,

17  a plaintiff may not be able to allege specifics about the class.  The allegations are sufficient at this

18  stage.  The demurrer is overruled.

19  **II.**    **MOTION TO STRIKE**

20       **A.**   **Punitive Damages**

21       Defendants move to strike the request for punitive damages because the FAC does not

22  allege facts showing oppression, fraud or malice.  (Motion at p. 3.)  Plaintiff argues the alleged

23  facts show Defendant installed spyware that transmitted Plaintiff's data to third parties and

24  allowed third parties to track her online activity.  (Opposition at p. 3.)

25       The FAC alleges in conclusory fashion that Defendants knowingly violated Plaintiff's

26  rights and acted with oppression and malice.  (FAC, ¶ 125.)  That is not sufficient.  The motion is

27  granted as to punitive damages.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     Attorney Fees**

Defendants argue Plaintiff has not alleged any statutory basis to recover attorney fees. (Motion at pp. 3-4.)  Plaintiff argues she can obtain attorney fees under Code of Civil Procedure section 1021.5.  (Opposition at p. 4.)  However, the FAC does not allege the right to attorney fees under that section.  The motion is granted as to attorney fees.

The demurrer is SUSTAINED with 30 days leave to amend.  The motion to strike is GRANTED with 30 days leave to amend

Dated:   __4/17/2025__

_Laura Seigle_

LAURA A. SEIGLE
JUDGE OF THE SUPERIOR COURT