1  **SQUIRE PATTON BOGGS (US) LLP**
   Yamili F. Gonzalez (State Bar # 327820)
2  yamili.gonzalez@squirepb.com
   555 South Flower Street, 31st Floor
3  Los Angeles, CA 90071
   Telephone:    +1 213 689 6540
4  Facsimile:    +1 213 623 4581

5  Kristin L. Bryan (admitted *pro hac vice*)
   kristin.bryan@squirepb.com
6  1120 Avenue of the Americas, 13th Floor
   New York, NY 10036
7  Telephone:  +1 212 872 9800
   Facsimile:  +1 212 872 9815

8
   *Attorneys for Defendant The Procter & Gamble*
9  *Company*

10              **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF CALIFORNIA**

11 MONICA DAWKINS,                          Case No. 1:25-cv-01287-JLT-HBK

12              Plaintiff,                  **DEFENDANT THE PROCTER &**
                                           **GAMBLE COMPANY'S NOTICE OF**
13      v.                                 **MOTION AND MOTION TO DISMISS**
                                           **FIRST AMENDED COMPLAINT**
14 THE PROCTER & GAMBLE COMPANY,

15              Defendant.
                                           Judge:        Hon. Jennifer L. Thurston
16
                                           Hearing: February 26, 2026
17

18

19

20

21

22

23

24

25

1    **TO THE HONORABLE COURT, AND TO PLAINTIFF AND HER COUNSEL OF**

2    **RECORD HEREIN:**

3    **NOTICE IS HEREBY GIVEN** that on February 26, 2026, in Courtroom 4, 7th Floor of

4    the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, CA 93721, Defendant

5    The Procter & Gamble Company ("P&G") will and hereby does move the Court to dismiss the

6    above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that

7    Plaintiff fails to state a claim against P&G upon which relief can be granted.

8    This Motion is based upon this Notice, the accompanying Memorandum of Points and

9    Authorities, all pleadings, papers and records on file in this Action, and such other oral argument

10   and documentary evidence as may be presented at or before the time of adjudication of this Motion.

11   On November 5, 2025 and January 13, 2026, counsel for the parties discussed the substance

12   of the contemplated motion via telephone but were not able to come to a resolution.  Pursuant to

13   paragraph 1.C of this Court's Standing Order [ECF No. 3-1], undersigned counsel certifies that

14   meet and confer efforts have been exhausted.

15

16   Dated: January 20, 2026                    **SQUIRE PATTON BOGGS (US) LLP**
                                                  By: */s/ Kristin L. Bryan*
17                                               —————————————————
                                                       Kristin L. Bryan
18
                                                 *Attorney for Defendant The Procter & Gamble*
19                                               *Company*

20

21

22

23

24

25

1

# **TABLE OF CONTENTS**

2

Table of Authorities ................................................................................................ iv

I.      Introduction.................................................................................................1

II.     Background .................................................................................................3

        A.      The Website .....................................................................................3

        B.      Internet Background And The Alleged Tracking Technologies............................3

        C.      Plaintiff's Alleged Website Visit ..................................................6

III.    Legal Standard ...........................................................................................7

IV.     Argument ....................................................................................................8

        A.      Plaintiff's Section 638.51 Claim Should Be Dismissed With Prejudice Because The Tracking Technologies Are Not Pen Register Nor Trap And Trace Devices.............................................................................8

                1.      The Tracking Technologies Are Not Pen Registers Nor Trap And Trace Devices Because They Do Not Collect the Origin Address Information For Incoming Communications Nor Destination Address Information For Outgoing Communications. ...............8

                2.      Section 638.51 Applies Only To Telephonic Wire Or Electronic Communications. ...................................................14

        B.      The Section 631 Claim Should Be Dismissed With Prejudice Because No Third Party Read The Contents Of A Communication In Transit. ........................16

                1.      Plaintiff Does Not Plausibly Allege, And Expressly Disclaims, That Any Third Party Intercepted The Contents Of A Communication.............17

                2.      Plaintiff Does Not And Cannot Plausibly Allege That Any Third Party Read The Content Of A Communication In Transit. ......................20

V.      Conclusion .................................................................................................22

21

22

23

24

25

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*Anne Heiting v. HP Inc.*,
    No. 24STCV29634, 2025 WL 2993673 (Cal. Super. Ct., L.A. Cnty., Aug. 1,

5

    2025) ........................................................................................................... *passim*

6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................7, 8

7

*Aviles v. LiveRamp, Inc.*,
    No. 24STCV19869, 2025 WL 487196 (Cal. Super. Ct., L.A. Cnty. Jan. 28,

8

    2025) ...................................................................................................11, 13, 14

9

*B.K. Desert Care Network*, No. 23-cv-05021-SPG, 2024 WL 1343305 (N.D. Cal.
    Feb. 1, 2024) ....................................................................................................17

10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................7, 8

11

12

*Camacho v. DG Premium Brands LLC*,
    No. 24STCV21672 (Cal. Super. Ct., L.A. Cnty. Apr. 17, 2025)............................9, 11, 13, 14

13

*Doe v. Eating Recovery Ctr. LLC*,
    No. 23-cv-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ....................3, 20, 21, 22

14

*In re Google, Inc. Privacy Policy Litig.*,
    58 F.Supp.3d 968 (N.D. Cal. 2014) ...........................................................................7

15

16

*Jones v. Tonal Sys.*,
    751 F.Supp.3d at 1037–38 .........................................................................................19

17

*Jones v. Tonal Sys., Inc.*,
    751 F.Supp.3d 1025 (S.D. Cal. 2024).........................................................................17

18

*Maloney v. Scottsdale Ins. Co.*,
    256 F.App'x 29 (9th Cir. 2007) ................................................................................18

19

20

*Martin v. Conopco, Inc.*,
    No. 24STCV30397 (Cal. Super. Ct., L.A. Cnty. Nov. 12, 2025) ...............................11, 13, 14

21

*Moss v. ResortPass Inc*,
    No. 24CU023415C, 2025 WL 3452360 (Cal. Super. Ct., San Diego Cnty. Oct.

22

    30, 2025) ...................................................................................................20, 22

23

24

25

DEFENDANT'S NOTICE OF MOTION
        & MOTION TO DISMISS FAC
        1:25-cv-01287-JLT-HBK

*Palacios v. Fandom, Inc.*,
No. 24STCV11264, 2024 WL 5494527 (Cal. Super. Ct., L.A. Cnty. Sept. 24, 2024) ............................................................................................................................ *passim*

*Papasan v. Allain*,
478 U.S. 265 (1986) ...................................................................................................7

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Ct., L.A. Cnty. Apr. 1, 2025) ......................................................................................................................18

*R.C. v. Sussex Publishers, LLC*,
No. 24-cv-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025)..................16, 17, 20, 22

*Rodriguez v. Ink Am. Int'l Music Grp. LLC*,
No. 25STCV15350 (Cal. Super. Ct., L.A. Cnty. Dec. 10, 2025)................................16

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct., L.A. Cnty. Jan. 27, 2025) ..............................................................................................................14, 16

*Scharon v. Paramount Global*,
No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Ct., L.A. Cnty. Oct. 03, 2025) ..........................................................................................................2, 15, 16

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ................................21

*U.S. Med. Instruments, Inc. v. CFS N. Am., Inc.*,
No. 13-cv-00349-BEN DHB, 2013 WL 6055387 (S.D. Cal. Nov. 13, 2013)..................18, 19

*Yoon v. Lululemon USA, Inc.*,
549 F.Supp.3d 1073 (C.D. Cal. 2021) ...................................................................17

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ...............................................................................19

**Statutes**

Cal. Penal Code § 631 ...................................................................................... *passim*

Cal. Penal Code § 638.50 ...................................................................8, 9, 12, 18

Cal. Penal Code § 638.51 .................................................................................. *passim*

Cal. Penal Code § 638.52 ...................................................................................14, 15

**Court Rules**

Fed. R. Civ. P. 8 ...............................................................................................18

Fed. R. Civ. P. 12(b)(6) .......................................................................................... *passim*

Fed. R. Civ. P. 12(f) ........................................................................................................7

**Other Authorities**

Assembly Bill 929, 2015 Cal. Legis. Serv. Ch. 204 ...................................................14

*Hearing on AB 929 Before the Assembly Comm. on Pub. Safety* (Apr. 7, 2015),
     http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-
     0950/ab_929_cfa_20150406_093935_asm_comm.html .......................................15

Defendant The Procter & Gamble Company ("P&G"), through its attorneys, respectfully moves the Court for an order under Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing Plaintiff Monica Dawkins ("Plaintiff")'s First Amended Complaint, ECF No. 14 with prejudice.

## I.    <u>INTRODUCTION</u>

P&G is one of the world's largest consumer goods companies and serves billions of consumers worldwide.  P&G's Ivory brand sells personal hygiene goods used by countless American households on a daily basis: soaps, body washes, and deodorant.  P&G, for its brand Ivory, operates the website https://ivory.com (the "Website").  Plaintiff alleges that she visited the Website and looked at webpages and articles about Ivory products.  As a result of this routine browsing session that allegedly involved technology relied upon by millions of websites to optimize website functions and e-commerce.

Plaintiff first filed her lawsuit on September 29, 2025 (ECF No. 1), and P&G timely moved to dismiss her complaint (ECF No. 8).  Rather than respond to the substance of the motion, Plaintiff filed a notice of non-opposition (ECF No. 10) and filed her First Amended Complaint (the "FAC") on January 5, 2026.  In her FAC, Plaintiff is once again attempting to impose civil liability and statutory damages on P&G.  Plaintiff's FAC suffers from the same fundamental flaws as the original Complaint, as well as additional deficiencies necessitating dismissal.  Notably, Plaintiff's new allegations about her "body odor concerns," FAC ¶¶ 167–187, and other additional allegations do not support either of the two causes of action brought by Plaintiff, and are in fact irrelevant to the elements of those claims.

The FAC asserts two civil causes of action against P&G predicated on California criminal statutes: **(1)** use of a "pen register" or "trap and trace device" in violation of California Penal Code § 638.51 ("Section 638.51"); and **(2)** aiding-and-abetting eavesdropping of communications in

transit in violation of California Penal Code § 631 ("Section 631").  Both counts allege that the Website embeds certain tracking technologies ("Tracking Technologies," which the FAC calls "Trackers") on a visitor's browser that may collect metadata associated with the browser, including the IP address the visitor uses.  This Court should reject Plaintiff's attempt to impose liability for routine website visits and dismiss both claims of the FAC.

Plaintiff's Section 638.51 claim (Count I) should be dismissed because the Tracking Technologies as alleged are neither pen registers nor trap and trace devices under California law. By statutory definition, the Tracking Technologies are not pen register or trap and trace devices for at least two independent and sufficient reasons.  *First*, in the FAC, Plaintiff expressly alleges that the Tracking Technologies are installed on her device and collect address information about the Plaintiff's own device.  These allegations cannot support a claim under Section 638.51.  Under that statute, a trap and trace device collects the phone numbers originating incoming communications to the attached device, and a pen register collects the outgoing destination phone numbers the attached device communicates with.  Section 638.51 plainly ***does not*** prohibit a party from using a device that only collects information about where it is installed—as California courts have so recognized.  *See Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Ct., L.A. Cnty. Sept. 24, 2024) (sustaining demurrer to Section 638.51 claim because information collected by alleged technology was "computer's own IP address").  ***Second***, as the text of the statute makes clear, Section 638.51 only applies to telephonic communications.  *See, e.g.*, *Scharon v. Paramount Global*, No. 25STCV10585, 2025 WL 2996812, at *1, 3 (Cal. Super. Ct., L.A. Cnty. Oct. 03, 2025) (sustaining demurrer without leave to amend because "section 638.51 applies to telephone lines, not websites").

Plaintiff's Section 631 claim (Count II) should also be dismissed for two independent and sufficient reasons.  ***First***, Plaintiff does not plausibly allege that the "contents" of her

communications were intercepted by any operator of a Tracking Technology. In fact, Plaintiff repeatedly expressly disclaims this element, and asserts that "Plaintiff does not allege interception of the contents of her communications." FAC ¶ 153. On this basis alone, Plaintiff's Section 631 claim must be dismissed. ***Second***, even if the Tracking Technology operators received the "content" of a communication, Plaintiff makes no plausible allegation that any third party attempted to read such content while it was in transit. Merely receiving the content and later analyzing it is not enough to state a Section 631 claim. *See, e.g.*, *Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 WL 2971090, at \*6-7 (N.D. Cal. Oct. 17, 2025) (granting summary judgment for defendant on Section 631 claim because no evidence third party attempted to learn communications while in transit).

For these reasons and as explained more fully below, the Court should dismiss the entirety of the FAC with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II. BACKGROUND

### A. The Website

As alleged in the FAC, P&G is one of the world's largest consumer goods companies and serves billions of consumers worldwide. *See* FAC ¶ 18. P&G, for its brand Ivory, operates the Website. *See* FAC ¶ 1. Beyond delivering information about Ivory products, the Website provides visitors with information on promotions and company values, allows users to connect with customer support, and enables "access [to] broader P&G resources." FAC ¶ 20. The Website is one website of many operated by P&G as part of its "broader marketing and customer engagement systems." FAC ¶ 21.

### B. Internet Background And The Alleged Tracking Technologies

When a person visits any website, the visitor's browser makes a request of the computer that hosts the website, and that server responds with files. *See* FAC ¶ 43. Specifically, what the

user's browser "requests" is the content of a specific URL (or URI) like https://ivory.com, but the request can include other information in its "header."  *See* FAC ¶¶ 43, 225 & fig. 10 (sample of request to google-analytics.com URL).  The requests made by the visitor's browser are called HTTPS requests, or more specifically GET requests and POST requests; the responses by the server are HTTPS responses.  *See* FAC ¶¶ 43, 45, 47.  When websites are hosted on the Internet (like the Website here), every request and response must be sent to an Internet Protocol ("IP") address.  *See, e.g.*, FAC ¶ 50 ("An IP address is essential for identifying a device on the internet."), ¶ 88 ("These requests include the user's IP address, which is transmitted automatically as part of the HTTP request header.").

Although the information in a visitor HTTP request (like the requested URL, the referred URL, and other header information about the visitor) could plausibly be understood as the content of a communication with a webserver, the FAC expressly and repeatedly disclaims this information as contents of a communication for purposes of Plaintiff's claims.  *See, e.g.* FAC ¶ 10 (detailing "non-content information").  This disaffirmation is clear from the four corners of the FAC's allegations:

- "***Plaintiff does not allege interception of the contents of her communications***; rather, she alleges that Defendant caused the Website to record and transmit the routing, dialing, addressing, and signaling information associated with the exact product pages she viewed, the structure of which permitted the third-party recipients to determine the product types Plaintiff browsed and to update behavioral and identity-graph files associated with her device."  FAC ¶ 153 (emphasis supplied);

- "***The Google Trackers capture non-content signaling information*** such as IP addresses, URLs visited, timestamps, browser and device identifiers, and referrer

data associated with electronic communications between the user and the Website. This metadata reflects addressing and routing details." FAC ¶ 230 (emphasis supplied);

- "*The Facebook Tracker captures non-content signaling information* such as IP addresses, URLs visited, timestamps, browser and device identifiers, and referrer data associated with electronic communications between the user and the Website. This metadata reflects addressing and routing details." FAC ¶ 244 (emphasis supplied); and

- "*The Tapad Tracker captures non-content signaling information* such as IP addresses, URLs visited, timestamps, browser and device identifiers, referrer data, and persistent cookies associated with electronic communications between the user and the Website. This metadata reflects addressing and routing details." FAC ¶ 257.

The files that a website server provides in response to an HTTPS request include markup files, images, and other resources that make the text and visual appearance of the website. *See* FAC ¶ 43. Plaintiff's FAC uses the legal label of "content" or "page content" to refer to these files. *See, e.g.*, FAC ¶¶ 11, 276. To help disambiguate factual allegations from legal conclusions, this Motion will refer to files a website server provides in response to an HTTPS request as "Webpage Files." *See also infra* IV.B.1 (analyzing meaning of "content" of communications under Section 631 and Plaintiff's inconsistent legal conclusions).

The files that a website server provides in response to an HTTPS request can include pixel and web beacon scripts that the FAC refers to as "Trackers." *See* FAC ¶¶ 4–7, 44. Plaintiff alleges that the Website's HTTPS responses cause Tracking Technologies operated by three third parties—Google, Meta, and Tapad—to be installed on Plaintiff's browser. *See* FAC ¶¶ 6–8; *see*

*also, e.g.*, FAC ¶ 76.[1]  Allegedly, the Tracking Technologies transmit information to the respective third party about the user's web visit, including "users' IP addresses, full page URLs, referrer information, and device characteristics."  FAC ¶ 195.  The way that these Tracking Technologies allegedly transmit this information to the Tracking Technology operator is through the user's browser making another HTTPS request to the Tracking Technology operator's server.  *See* FAC ¶¶ 224–27 (Google), ¶¶ 236–41 (Meta), ¶¶ 250–54 (Meta).  In other words, Plaintiff alleges that the same "non-content" information contained in the communications with the Website through HTTPS responses and requests—the requested URLs and header information—are transmitted to the operators of the Tracking Technologies.  Plaintiff does not allege that any Webpage Files are transmitted to the operators.  *See generally* FAC.

### C.    Plaintiff's Alleged Website Visit

The FAC alleges that Plaintiff is a citizen of the State of California residing in Tulare County.  FAC ¶ 16.  Plaintiff allegedly visited the Website "during the relevant statute of limitations period."  *See* FAC ¶¶ 16, 263.

Plaintiff alleges that she visited pages for certain products on the Website, including https://ivory.com/ivory-body-wash-coconut (body wash), https://ivory.com/gentle-bar-soap-warm-vanilla-oat-milk (soap), and https://ivory.com/ivory-gentle-coconut-deodorant (deodorant).  *See* FAC ¶ 150.  Plaintiff also alleges that she visited "articles" on the Website, such as https://ivory.com/this-deodorant-is-kinder-and-gentler-on-your-skin.  FAC ¶¶ 158–60.  Plaintiff alleges that these URLs, along with "referrer headers, timestamp signals, IP address, and persistent device identifiers" were transmitted to the operators of Tracking Technologies.  FAC ¶ 149.  There

---

[1] The FAC contains occasional inconsistent allegations that the Tracking Technologies are "install[ed]" on the Website instead of Plaintiff's browser.  *See, e.g.*, FAC ¶ 2.  As explained *infra* Section IV.A.1, this variance is immaterial.

1    are no allegations that Plaintiff visited any other webpage.  *See generally* FAC.  Nor are there

2    allegations that Plaintiff had non-Website URLs she visited disclosed to any the operators of any

3    Tracking Technologies because of the Website.  *See generally* FAC.

4          The FAC includes additional allegations about the supposedly "highly sensitive and

5    personal nature" of Plaintiff's "body odor concerns" revealed from URLs leading to deodorant

6    product pages and articles about deodorant.  *See* FAC ¶¶ 167–187.  As a threshold matter, the FAC

7    does not explain how browsing for a routine household product—whether deodorant, toilet paper,

8    or a toothbrush—reveals "highly sensitive" information about the Plaintiff or any other consumer.

9    And in any event, for purposes of P&G MTD, as the alleged sensitivity of the information received

10   by third parties is irrelevant to both Section 638.51 and Section 631 claims, *see generally infra*

11   Section IV, these allegations should be disregarded by the Court.  *Cf.* Fed. R. Civ. P. 12(f) ("The

12   court may strike from a pleading an insufficient defense or any redundant, ***immaterial***,

13   ***impertinent***, or scandalous matter."  (emphasis supplied)).

14   **III.    LEGAL STANDARD**

15         Under Rule 12(b)(6), a party may move to dismiss a cause of action for failure to state a

16   claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss,

17   a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

18   is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

19   *Twombly*, 550 U.S. 544, 570 (2007)).  Courts, however, "need not accept as true allegations that

20   are conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Google, Inc.*

21   *Privacy Policy Litig.*, 58 F.Supp.3d 968, 977 (N.D. Cal. 2014) (dismissing invasion of privacy

22   claim).  Courts also "are not bound to accept as true a legal conclusion couched as a factual

23   allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

24

25

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 556).

## IV.    ARGUMENT

### A.    Plaintiff's Section 638.51 Claim Should Be Dismissed With Prejudice Because The Tracking Technologies Are Not Pen Register Nor Trap And Trace Devices.

Plaintiff's Section 638.51 claim should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because the Tracking Technologies as alleged do not meet the statutory definition for either a pen register or a trap and trace device.  *See* Cal. Penal Code § 638.50.  As addressed *infra* in this Section IV.B, the Tracking Technologies do not meet at least two elements of the definitions, either one of which is fatal to Plaintiff's claim: **(1)** the Tracking Technologies do not collect origin address information for incoming communications or destination address information for outgoing communications; and **(2)** pen registers and trap and trace devices are applicable only to telephonic communications, not internet browsing.

#### 1.    The Tracking Technologies Are Not Pen Registers Nor Trap And Trace Devices Because They Do Not Collect the Origin Address Information For Incoming Communications Nor Destination Address Information For Outgoing Communications.

Plaintiff's Section 638.51 claim should be dismissed for the independent and sufficient reason that the Tracking Technologies as alleged do not record or capture the origin address information for communications incoming to Plaintiff's device nor the destination address information of communications from Plaintiff's device.  Instead, Plaintiff alleges that the Tracking Technologies collect address information for Plaintiff's own device, which is not prohibited by Section 638.51.  *See, e.g.*, *Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 WL 5494527, at

DEFENDANT'S NOTICE OF MOTION
& MOTION TO DISMISS FAC
1:25-cv-01287-JLT-HBK

*3 (Cal. Super. Ct., L.A. Cnty. Sept. 24, 2024) (sustaining demurrer to Section 638.51 claim because information collected by alleged technology was "computer's own IP address").[2]

Section 638.51 was enacted "to expand the ability of law enforcement to use [pen registers or trap and trace devices] to determine who a subject of a criminal investigation is call and is receiving phone calls from." ECF No. 8-6, Order at 2, *Camacho v. DG Premium Brands LLC*, No. 24STCV21672 (Cal. Super. Ct., L.A. Cnty. Apr. 17, 2025) (sustaining demurrer to Section 638.51 claim). A pen register records "the phone numbers called by the target." *Anne Heiting v. HP Inc.*, No. 24STCV29634, 2025 WL 2993673, at *3 (Cal. Super. Ct., L.A. Cnty., Aug. 1, 2025). A trap and trace device collects "the phone numbers of calls made to the target." *Id.* at *3.

Plaintiff alleges that the Tracking Technologies are pen registers "and/or" trap and trace devices, *see, e.g.*, FAC ¶ 3, but these statutory definitions are not interchangeable. Under California statutory law, a pen register is a device that "records ***[address] information transmitted by an instrument*** . . . from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b) (emphasis supplied). By comparison, the California Penal Code distinguishes a trap and trace device from pen registers as a trap and trace is defined as a device that "captures the ***incoming [address] information*** reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c) (emphasis supplied).

California precedent is clear that a device that only records the address information of the device on which it is installed (without recording the destination of the device's outgoing

---

[2] P&G's motion to dismiss identified the same deficiencies with Plaintiff's Section 638.51 claim in the original complaint. *See* ECF No. 8 at 12–16. The additional allegations in Plaintiff's FAC do not address any of these deficiencies.

communications or the origin of the device's incoming communications) is neither a pen register nor a trap and trace device.  For example, in *Palacios v. Fandom*, the plaintiff, like Plaintiff here, alleged that the defendant website operator caused a Tracking Technology to be installed on her browser which "causes the user's browser to send the user's IP address to third-party software developers when the user visits the website."  2024 WL 5494527, at *1.  The plaintiff argued that this constituted either a pen register or a trap and trace device, but the court dismissed plaintiff's Section 638.51 claim under both theories.  *Id.* at *3.  As to the pen register theory, the Court explained that the Tracking Technology was "not a pen register because it does not collect the destination information of communications from Plaintiff's computer."  *Id.* ("The analog of the number dialed by a telephone here is the IP address and related information of a website accessed by a computer – but not the computer's own IP address.").  And likewise, as to the trap and trace device theory plaintiff advanced, this too, failed.  The Court explained that the Tracking Technology was not a trap and trace device because there were no allegations that it "collect[ed] incoming information directed toward Plaintiff's computer."  *Id.*

Similarly, and consistent with *Palacios*, a person cannot be liable for installing a purported pen register or trap and trace device on their own device or website.  In *Heiting v. HP*, for example, the plaintiff alleged that a Tracking Technology (operated by TikTok) was installed on the defendant's website, gathered the plaintiff's IP address and device information, and thus was a trap and trace device.  2025 WL 2993673, at *2–3.  The Court rejected the argument that the Tracking Technology was a trap and trace device, explaining that Section 638.51 "prohibits receiving unauthorized information about incoming communications from other parties—***not information that passes between plaintiff and defendant*** when plaintiff contacts the defendant."  *Id.* at *4 (emphasis supplied).  Otherwise, the Court observed, Section 638.51 would nonsensically

1   prohibit, "every cell phone in the world" because they all "identify the phone number of incoming

2   call." *Id.*  The Court ultimately sustained the demurrer without leave to amend.  *Id.*

3          Other courts have reached the same conclusion as *Heiting* and ruled that a website does not

4   violate Section 638.51 by using a Tracking Technology that collects address information about the

5   website visitor.  For example, the Court in *Camacho v. DG Premium* sustained a demurrer to a

6   Section 638.51 upon concluding that "[t]he statute does not prohibit a defendant from collecting

7   identifying information about who the defendant is communicating with and who is

8   communicating with the defendant."  ECF No. 8-6, Order at 3, *Camacho v. DG Premium Brands*

9   *LLC*, No. 24STCV21672 (Cal. Super. Ct., L.A. Cnty. Apr. 17, 2025).  And the Court in *Martin v.*

10  *Conopco* similarly sustained a demurrer and rejected a theory that a Tracking Technology was a

11  trap and trace device because there were no allegations that "Defendant's website puts any sort of

12  device or tracker on Plaintiff that allows Defendant to monitor who else contacts Plaintiff."

13  Declaration of James M. Brennan in Support of Motion to Dismiss FAC ("Brennan FAC Decl."),

14  Ex. 1, Order at 8–9, *Martin v. Conopco, Inc.*, No. 24STCV30397 (Cal. Super. Ct., L.A. Cnty. Nov.

15  12, 2025)

16         As yet another example, in *Aviles v. LiveRamp*, the Court also rejected the alternate theory

17  that the Tracking Technology was a pen register.  No. 24STCV19869, 2025 WL 487196, at *2

18  (Cal. Super. Ct., L.A. Cnty. Jan. 28, 2025).  As the Court explained, the Plaintiff did not allege

19  that the Tracking Technology collected "the outgoing addressing information from visitors'

20  devices or browsers," other than the address of defendant's own website. *Id.*  The Court concluded

21  that, the plaintiff "at most alleges that Defendant's Website collects the IP addresses and other

22  information of visitors incoming to the website" which was not actionable because it is "the

23  equivalent of if Defendant had used a trap and trace device on its *own* website, rather than on

24  Plaintiff's device." *Id.*  at *3.

1    To illustrate all these propositions with phone numbers, say there is a device attached to a

2    person ("Jenny")'s phone line with the number 867-5309.  If that device recorded other phone

3    numbers that Jenny dialed out from 867-5309, it would be a pen register under California law.  *See*

4    Cal. Penal Code § 638.50(b).  Conversely, if the device captured the phone numbers of other

5    people who dialed Jenny at 867-5309, it would be a trap and trace device under California law.

6    *See* Cal. Penal Code § 638.50(c).  However, as California precedent makes clear, a device on

7    Jenny's phone that only tracks the fact that Jenny's phone number was 867-5309, without tracking

8    the numbers that called Jenny or destination of Jenny's calls, would be neither a pen register nor a

9    trap and trace device.  *See Palacios*, 2024 WL 5494527, at *3.  And, under California precedent,

10   Jenny cannot be liable for installing a device on her own phone that captures the numbers for

11   incoming calls or records numbers for her outgoing calls.  *See, e.g.*, *Heiting v. HP*, 2025 WL

12   2993673, at *2.

13   Plaintiff primarily alleges that P&G installed the Tracking Technologies on Plaintiff's

14   device.  *See, e.g.*, FAC ¶ 76 ("Defendant installs the Trackers onto the user's browser.").  However,

15   Plaintiff also inconsistently alleges  that the Tracking Technologies are installed on P&G's

16   Website.  *See, e.g.*, FAC ¶ 2.  In any event, the only "communications" with alleged address

17   information are the "electronic communications" of Plaintiff's visits to P&G's own Website.  *See,*

18   *e.g.*, FAC ¶¶ 223, 236, 250 ("Tracker thus functions as a pen register and/or trap-and-trace device

19   by capturing addressing and signaling information tied to users' communications with the

20   Website."); *id.* ¶¶ 230, 244, 257.  From those "communications," the only associated address

21   information that Plaintiff puts at issue is the address information from Plaintiff's own device.  *See,*

22   *e.g.*, FAC ¶ 10 ("Through the Trackers, Third Parties collect a wide range of routing, addressing,

23   and signaling information ***from users' browsers and devices***." (emphasis supplied)).

24

25

Assuming that the Tracking Technologies are installed on Plaintiff's browser (as most consistently alleged), there can be no liability under Section 638.51 for the recording of Plaintiff's own device information.  Because there are no allegations that the Tracking Technologies record the address information for ***the origin of communications incoming to Plaintiff's device*** (such as phone numbers or IP addresses contacting Plaintiff), the Tracking Technologies are not pen registers.  Because there are no allegations that the Tracking Technologies collect address information for ***the destination of communications from Plaintiff's device*** (such as the phone numbers or IP addresses that Plaintiff dialed or visited), the Tracking Technologies are not trap and trace devices.  Thus, the Section 638.51 claim should be dismissed.  *See Palacios*, 2024 WL 5494527, at *3 (sustaining demurrer because alleged information collected by device on plaintiff's computer was plaintiff's own address information).

Nor can P&G be liable for installing Tracking Technologies on the Website (as less frequently alleged in the FAC, *see, e.g.*, FAC ¶¶ 2, 235, 249, 262) that capture the address information for Plaintiff's device.  This argument attempts to make P&G liable for capturing "information that passes between plaintiff and defendant when plaintiff contacts the defendant." *Heiting v. HP*, 2025 WL 2993673, at *4.  Such an argument is non-sensical, and indeed California courts have dismissed Section 638.51 claims raising this theory.  *See, e.g.*, *Heiting v. HP*, 2025 WL 2993673, at *4 (sustaining demurrer without leave to amend); ECF No. 8-6, Order at 3–4, *Camacho v. DG Premium* (sustaining demurrer); *Palacios*, 2024 WL 5494527, at *3 (same); *Aviles*, 2025 WL 487196, at *3 (same); Brennan FAC Decl., Ex. 1, Order at 9, *Martin v. Conopco* (same).

For these reasons, because the Tracking Technologies as alleged do not record or capture the origin address information for communications incoming to Plaintiff's device or the destination address information of communications from Plaintiff's device, Plaintiff's Section 638.51 claim

1  should be dismissed with prejudice.  *See, e.g.*, *Heiting v. HP*, 2025 WL 2993673, at *4 (sustaining

2  demurrer without leave to amend); ECF No. 8-6, Order at 3–4, *Camacho v. DG Premium*

3  (sustaining demurrer); *Palacios*, 2024 WL 5494527, at *3 (same); *Aviles*, 2025 WL 487196, at *3

4  (same); Brennan FAC Decl., Ex. 1, Order at 9, *Martin v. Conopco* (same).

5           **2.  Section 638.51 Applies Only To Telephonic Wire Or Electronic Communications.**

6        Plaintiff's Section 638.51 claim should be dismissed for the independent and sufficient

7  reason that the language of Cal. Penal Code §§ 638.50–.53 demonstrates that Section 638.51 is

8  applicable only to telephonic communications.  P&G's motion to dismiss identified the same

9  deficiency with Plaintiff's Section 638.51 claim in the original complaint.  *See* ECF No. 8 at 17–

10  18.  The additional allegations in Plaintiff's FAC do not address this deficiency.

11        "The California legislature enacted Assembly Bill 929, the genesis of CIPA section 638.51,

12  in 2015 to create a comprehensive framework governing how California law enforcement officials

13  could obtain and use a pen register or trap and trace device, just like its federal counterpart [18

14  U.S.C. § 3121]."  *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal.

15  Super. Ct., L.A. Cnty. Jan. 27, 2025) (dismissing Section 638.51 claim on basis that Section 638.51

16  is applicable to telephone communications, not web browsing); *see also* Assembly Bill 929, 2015

17  Cal. Legis. Serv. Ch. 204 (West).  In the section specifying how a court order can authorize

18  installation of a pen register or trap and trace device, multiple provisions make clear that a pen

19  register or trap and trace device ***can only be attached to a telephone line and number***; *see* Cal.

20  Penal Code § 638.52(d)(1) (order must specify "the person . . . whose name is listed the telephone

21  line to which the pen register or trap and trace device is to be attached"); § 638.52(d)(3) ("The

22  number and, if known, physical location of the telephone line to which the pen register or trap and

23  trace device is to be attached.").  In other words, under the plain language of the statute, it is non-

24

1    sensical to say that a web browser—as alleged in the Complaint—can have a pen register or trap

2    and trace device installed on it.

3          Moreover, the statute's legislative history has other indicia that a pen register or a trap and

4    trace device is only applicable to telephone lines and numbers.   The Assembly Member who

5    authored the statement accompanying the bill describes pen registers as allowing law enforcement

6    "to record all outgoing numbers from *a particular telephone line*," and describes a trap and trace

7    device as "allow[ing] them to record what numbers have called a *specific telephone line*, *i.e*. all

8    incoming *phone numbers*."  *See Hearing on AB 929 Before the Assembly Comm. on Pub. Safety*

9    at    5    (Apr.    7,    2015),    http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-

10   0950/ab_929_cfa_20150406_093935_asm_comm.html (emphases supplied).

11         For these reasons, many courts that have considered the statute's language referring to

12   telephone lines and telephone numbers have concluded that technologies that track web browsing

13   activity cannot be pen registers or trap and trace devices under California law, and correspondingly

14   dismissed claims under Section 638.51.

15         For example, In *Scharon v. Paramount Global*, the Court sustained demurrer to the

16   plaintiff's Section 638.51 without leave to amend after concluding that "section 638.51 applies to

17   telephone lines, not websites."  No. 25STCV10585, 2025 WL 2996812, at *1 (Cal. Super. Ct.,

18   L.A. Cnty. Oct. 03, 2025).  The Court based its decision on both the surrounding statutory Cal.

19   Penal Code § 638.52(d) and the legislative history indicating "the legislative intent behind the

20   statute was to govern installation of pen registers and trap and trace devices on telephones and

21   telephone lines, not on other devices that might access the internet."  *Id.* at *2.  The Court also

22   noted that contrary federal trial court rulings are neither controlling nor persuasive "because they

23   ignore other facts of California law," including provisions of California consumer privacy law that

24

25

1  would become a nullity if Section 638.51 prohibited collecting and disclosing data from website

2  visitors.  *Id.* at *2.

3      Other decisions are in accord with *Scharon*.  In *Sanchez v. Cars.com*, the Court sustained

4  demurrer of the plaintiff's Section 638.51 claim without leave to amend because "'[p]en register'

5  and 'tra[p] and trace devices' refer to devices or processes that are used to record or decode dialing,

6  routing, addressing, or signaling information *from telephone numbers*, and *not internet*

7  *communications such as websites*."  2025 WL 487194, at *3 (emphasis supplied).  And in

8  *Rodriguez v. Ink America International Music Group*, the Court granted motion for judgment on

9  the pleadings without leave to amend, holding that the statute's "history and structure represent[]

10  a telephonic limitation, referenced throughout the statutory scheme" and that the Legislature would

11  need to enact an amendment if it wished to "criminalize the use of analytical tools at issue in this

12  case."  Brennan FAC Decl., Ex. 2, Notice at Ex. B, *Rodriguez v. Ink Am. Int'l Music Grp. LLC*,

13  No. 25STCV15350 (Cal. Super. Ct., L.A. Cnty. Dec. 10, 2025).

14      For the same reason, this Court should dismiss Plaintiff's Section 638.51 claim with

15  prejudice.  *See Scharon v. Paramount Global*, 2025 WL 2996812, at *1.

16  **B.    The Section 631 Claim Should Be Dismissed With Prejudice Because No Third Party Read The Contents Of A Communication In Transit.**

17
18  Plaintiff's Section 631 claim, which alleges that P&G aided and abetted another person's

19  violation of Section 631, should be dismissed with prejudice.  "California Penal Code section 631

20  prescribes criminal penalties for three distinct and mutually independent patterns of conduct."

21  *R.C. v. Sussex Publishers, LLC*, No. 24-cv-02609-JSC, 2025 WL 948060, at *7-8 (N.D. Cal. Mar.

22  28, 2025) (granting motion to dismiss Section 631 aiding-and-abetting claim for failure to

23  plausibly allege predicate violation) (quotations omitted).  These three prohibited activities

24  include: **(1)** tapping into a wire, **(2)** willfully reading, attempting to read, or learning the contents

or meaning of any communication while it is in transit, and **(3)** using information obtained in violation of clause 1 or clause 2.  *See* Cal. Penal Code § 631(a); FAC ¶ 275.

The statute also prohibits aiding and abetting one of these three violations.  *See R.C. v. Sussex Publishers,* 2025 WL 948060, at *7; Cal. Penal Code § 631(a) ("anyone who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above").  "To adequately plead a civil aiding-and-abetting cause of action under section 631, a party must plead 'an underlying predicate violation' by the aided party."  *R.C. v. Sussex Publishers,* 2025 WL 948060, at *7 (quoting *B.K. Desert Care Network*, No. 23-cv-05021-SPG, 2024 WL 1343305, at *7 (N.D. Cal. Feb. 1, 2024) (dismissing section 631 aiding-and-abetting claim for failure to establish predicate violation)).

Here, Plaintiff asserts that P&G aided and abetted the operators of the Tracking Technologies—Google, Meta, and Tapad—because those third parties allegedly violated clause 2 of Section 631(a) and read the contents of communications in transit.  *See* FAC ¶¶ 8, 279.  However, Plaintiff's Section 631 claim should be dismissed with prejudice for two independent and sufficient reasons.  ***First***, Plaintiff does not plausibly allege that any third party intercepted the contents of a communication.  ***Second***, Plaintiff does not and cannot plausibly allege that any third party attempted to read the contents of a communication in transit.

### 1.   Plaintiff Does Not Plausibly Allege, And Expressly Disclaims, That Any Third Party Intercepted The Contents Of A Communication.

To state a claim for a violation of clause 2 of Section 631(a), Plaintiff must plausibly allege that the "contents" of her communications were intercepted.  *See Jones v. Tonal Sys., Inc.*, 751 F.Supp.3d 1025, 1037 (S.D. Cal. 2024) ("Courts in this Circuit have dismissed CIPA plaintiffs presenting similar facts for not sufficiently alleging intercepted 'contents.'"; collecting cases); *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1082–83 (C.D. Cal. 2021) (dismissing Section 631 clause 2 claim because data allegedly intercepted were not "content").  Plaintiff's Section 631

1    claim plainly should fail, because, in Plaintiff's own words, "Plaintiff ***does not allege*** interception

2    of the contents of her communications."   FAC ¶ 153 (emphasis supplied); *see also* FAC ¶ 274

3    (incorporating this allegation by reference into Plaintiff's Section 631 claim).   Plaintiff's

4    concession is not a stray allegation.   When discussing each Tracking Technology, Plaintiff alleges

5    that the information that the third party receives is "non-content" information.   *See* FAC ¶ 230

6    (describing "IP addresses, URLs visited, timestamps, browser and device identifiers, and referrer

7    data" as "non-content signaling information" received by Google), ¶ 244 (same for Meta), ¶ 257

8    (same for Tapad); *see also* FAC ¶ 274 (incorporating all these allegations by reference into

9    Plaintiff's Section 631 claim).[3]

10         While Fed. R. Civ. P. Rule 8 allows a plaintiff to plead factual allegations in the alternative,

11    it does not allow a plaintiff to incorporate inconsistent allegations into the same count.  It is well-

12    established in the Ninth Circuit that "where inconsistent allegations are not pled in the alternative,

13    but are expressly incorporated into each cause of action, an allegation may constitute a judicial

14    admission by the plaintiff which allows dismissal of the complaint."   *U.S. Med. Instruments, Inc.*

15    *v. CFS N. Am., Inc.*, No. 13-cv-00349-BEN DHB, 2013 WL 6055387, at *9 (S.D. Cal. Nov. 13,

16    2013) (dismissing count where it incorporated "each and every" prior allegation, including

17    allegation defeating claim) (citing *Maloney v. Scottsdale Ins. Co.,* 256 F.App'x 29, 31 (9th Cir.

18    2007) (district court properly dismissed complaint under Rule 12(b)(6) because allegation

19    expressly incorporated in count constituted judicial admission)).

20    _____

[3] It possible that Plaintiff's FAC made these new allegations in attempt to cure the deficiency with its
21    Section 638.51 claim discussed in P&G's original motion to dismiss: by definition, pen registers and trap
     and trace devices do not collect the contents of communications.  *See* Cal. Penal Code § 638.50(b), (c)
22    (defining both pen register and trap and trace device as devices that record or collect certain address
     information "but not the contents of a communication."); ECF No. 8 at 16–17; *Price v. Headspace, Inc.*,
23    No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Ct., L.A. Cnty. Apr. 1, 2025) (sustaining
     demurrer to Section 638.51 claim; "To put this yet another way, if the device is capturing the content of the
24    communications, it is definitionally not a trap and trace device.  For this reason, the demurrer will be
     sustained.").

1    Here, Plaintiff's Section 631 claim incorporates the allegations "in each preceding

2    paragraph," FAC ¶ 274, including the allegation that "Plaintiff does not allege interception of the

3    contents of her communications," FAC ¶ 153.  Because this allegation is an admission defeating

4    an element of a Section 631 claim, the claim should be dismissed.  *See, e.g.*, *U.S. Med. Instruments*,

5    2013 WL 6055387, at *9.

6    Even if Plaintiff's repeated concessions were ignored, the only plausible communication is

7    the FAC's inconsistent legal conclusion (couched as a factual allegation) that "page content"—*i.e.*

8    Webpage Files—constitutes the content of an intercepted communication.  *See, e.g.*, FAC ¶ 11.

9    The defect in Plaintiff's claim remains, however, as there are ***no plausible allegations*** that any

10   third party ever receives any Webpage Files through the Tracking Technologies.  *See generally*

11   FAC.  Specifically, Plaintiff alleges that Google, Meta, and Tapad received URLs of pages that

12   Plaintiff visited on the Website including https://ivory.com/ivory-body-wash-coconut.  *See* FAC

13   ¶¶ 150–53.  Again, Plaintiff repeatedly disclaims that such URLs are content of communications.

14   *See, e.g.*, FAC ¶ 230 ("URLs visited" is "non-content signaling information"); *see also In re Zynga*

15   *Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) ("[T]he webpage address identifies the location

16   of a webpage a user is viewing on the internet, and therefore functions like an 'address.'  Congress

17   excluded this sort of record information from the definition of 'contents' [under the federal

18   Electronic Communications Privacy Act of 1986.]").  Regardless, there are no allegations in the

19   FAC that Google, Meta, and Tapad ever received the Webpage Files at that URL to know what

20   images, text, or other data are on the webpages at those URLs.

21   Because Plaintiff does not plausibly allege (and in fact expressly disclaims) that any third

22   party receives the content of a communication, Plaintiff fails to state a claim for a violation of

23   clause 2 of Section 631.  *See, e.g.*, *Jones v. Tonal Sys.*, 751 F.Supp.3d at 1037–38 (dismissing

24   Section 631 claim under clause 2 for failure to allege receipt of communication contents).  Because

25

Plaintiff fails to allege an underlying violation, Plaintiff's aiding-and-abetting claim against P&G should be dismissed with prejudice. *See R.C. v. Sussex Publishers*, 2025 WL 948060, at *7 (dismissing Section 631 aiding-and-abetting claim for failure to plead predicate violation).

### 2. Plaintiff Does Not And Cannot Plausibly Allege That Any Third Party Read The Content Of A Communication In Transit.

Plaintiff's Section 631 claim should be dismissed for the independent and sufficient reason that the FAC does not plausibly allege, and cannot plausibly allege, that a third party read the content of any of Plaintiff's communications with the Website while in transit.

Section 631(a) provides liability for eavesdropping where a non-party to a communication "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit." Cal. Penal Code § 631(a). This element is not satisfied if a third party collects or receives the communication and may read it only later: the third party must attempt to ***read*** the communications while in transit. *See Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025) (granting summary judgment for defendant on Section 631 claim; "you must do something more than just intercept the communication while it is in transit to be held liable"); *Moss v. ResortPass Inc*, No. 24CU023415C, 2025 WL 3452360, at *1 (Cal. Super. Ct., San Diego Cnty. Oct. 30, 2025) (granting demurrer without leave to amend; adopting reasoning of *Doe v. Eating Recovery Center*).

As described *infra* IV.B.1, Plaintiff does not plausibly allege, and expressly disclaims, that any third party ever received the "content" of any communication. But regardless of which information Plaintiff may now contend is legally "content" despite her admission, Plaintiff makes no plausible allegations that Google, Meta, or Tapad ever attempted to contemporaneously ***read*** that information while it was in transit. There are no allegations that Google, Meta, or Tapad ever—let alone while the information was in transit—read the text of URL visited by Plaintiff. *See generally* FAC. There are similarly no allegations that Google, Meta, or Tapad ever—let alone

1  concurrently, while the information was in transit—clicked a URL visited by Plaintiff to receive

2  Web Files. *See generally* FAC. The most Plaintiff alleges is that information was automatically

3  "transmitted" to Google, Meta, and Tapad automatically upon page load. *See, e.g.*, FAC ¶ 277.

4  Mere transmission, however, is not reading.

5      The *Doe v. Eating Recovery Center* decision is on point. In that case, the plaintiff alleged

6  that the operator of a Tracking Technology embedded on defendant's website (Meta) received

7  page URLs and other information, including plaintiff's button clicks on webpages. 2025 WL

8  2971090, at *4. The information about Plaintiff's URLs and interactions were shared with Meta

9  near instantaneously, about 0.2 seconds, after Plaintiff made the interaction with defendant's

10  website. *Id.* at *5. Meta would then apply a filtering process on the data it received and attempt

11  to match it with individuals who had Meta user accounts. *Id.* at *2. The *Doe* Court held that such

12  facts did not constitute reading or attempting to learn the communication in transit, because Meta

13  only attempted to read or learn the content of the information after receiving and decrypting the

14  data. *Id.* at *5. The Court reasoned that California Penal Code § 632 covers unconsented reading

15  of stored communications, and that section would be rendered superfluous if Section 631 were

16  expanded beyond attempting to read the communications while they were in transit. *Id.* at 6 (citing

17  *Torres v. Prudential Fin., Inc.,* No. 22-cv-07465-CRB, 2025 WL 1135088, at *5 (N.D. Cal. Apr.

18  17, 2025) (granting summary judgment to defendant website operator on Section 631 claim

19  because no evidence Tracking Technology actually <u>did</u> attempt to decipher contents of any

20  communication in transit)).

21      Here, like the plaintiff in *Doe v. Eating Recovery Center*, Plaintiff alleges that the Tracking

22  Technologies transmit information to the operators near instantaneously after it is communicated

23  between Plaintiff and the Website. *See, e.g.*, FAC ¶ 81. But completely absent from the FAC are

24

1  any allegations that an operator of a Tracking Technology attempted to read any communication

2  while it was in transit.  *See generally* FAC.

3        Because Plaintiff has not and cannot plausibly allege that any third party attempted to read

4  the contents of any communication while in transit, Plaintiff has failed to plead a violation of

5  Section 631(a) clause 2.  *See Doe v. Eating Recovery Ctr*, 2025 WL 2971090, at *6; *Moss v.*

6  *ResortPass*, 2025 WL 3452360, at *1 (granting demurrer without leave to amend; adopting

7  reasoning of *Doe v. Eating Recovery Center*).  Because Plaintiff fails to allege an underlying

8  violation, Plaintiff's aiding-and-abetting claim against P&G should be dismissed with prejudice.

9  *See R.C. v. Sussex Publishers*, 2025 WL 948060, at *7 (dismissing Section 631 aiding-and-abetting

10  claim).

11  **V.    CONCLUSION**

12        For the foregoing reasons, Defendant respectfully requests that the Court dismiss the

13  entirety of the Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure

14  to state a claim.

15

16  Dated: January 20, 2026                    **SQUIRE PATTON BOGGS (US) LLP**
                                                 By: */s/ Kristin L. Bryan*
17                                                    Kristin L. Bryan

18                                               *Attorney for Defendant The Procter & Gamble*
                                                 *Company*
19

20

21

22

23

24

25