1

2  Reuben D. Nathan, Esq. (SBN 208436)
   **NATHAN & ASSOCIATES, APC**
3  2901 W. Coast Hwy., Suite 200
   Newport Beach, CA 92663
4  Office: (949) 270-2798
   Email: rnathan@nathanlawpractice.com

5  Ross Cornell, Esq. (SBN 210413)
   **LAW OFFICES OF ROSS CORNELL, APC**
6  40729 Village Dr., Suite 8 - 1989
   Big Bear Lake, CA 92315
7  Office: (562) 612-1708
   Email: rc@rosscornelllaw.com

8
   Attorneys for Plaintiff, MONICA DAWKINS
9

10

11                **UNITED STATES DISTRICT COURT**

12              **EASTERN DISTRICT OF CALIFORNIA**

13

14  | MONICA DAWKINS, on behalf of herself | Case No:  1:25-cv-01287-JLT-HBK |
15  | and all similarly situated persons, | |
    | | Hon. Jennifer L. Thurston |
16  |                 Plaintiff, | |
    | v. | **PLAINTIFF'S OPPOSITION TO** |
17  | | **DEFENDANT'S MOTION TO DISMISS FIRST** |
    | THE PROCTER & GAMBLE | **AMENDED COMPLAINT** |
18  | COMPANY, an Ohio corporation, | |
    | | |
19  |                 Defendants. | |

20

21

22

23

24

                                        1:25-cv-01287-JLT-HBK

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     SUMMARY OF ARGUMENT ................................................................................... 1

III.    PROCEDURAL HISTORY ......................................................................................... 2

IV.     LEGAL STANDARD ................................................................................................. 3

V.      PLAINTIFF STATES A CLAIM UNDER CALIFORNIA PENAL CODE § 631 ................... 3

    B.      The FAC Alleges Interception of Communication "Contents." ........................... 3

        1.      P&G's "Judicial Admission" Argument Fails. ........................................... 4

        2.      The FAC Plausibly Alleges Interception of "Contents." ........................... 7

    C.      Plaintiff Adequately Alleges That Third Parties "Read" Communications "In Transit." ... 9

        1.      Doe v. ERC is inapposite because it addressed Meta Pixel on summary judgment, not RTB platforms at the pleading stage ............................................. 9

        2.      The FAC plausibly alleges contemporaneous, in-transit interception. ........................ 13

    D.      P&G Is Independently Liable Under Section 631(a)'s "Use" and "Aiding" Provisions. . 14

        1.      P&G "used" the intercepted information. .................................................. 14

        2.      P&G "aided" the third-party interceptions. .............................................. 15

VI.     PLAINTIFF'S SECTION 638.51 CLAIM STATES A PLAUSIBLE CLAIM FOR RELIEF ........................................................................................................... 15

    A.      P&G's Narrow Framing Misreads the Statute and the FAC. ........................... 15

    B.      Plaintiff Alleges Capture and Transmission of Outgoing Destination Addressing Information. ......................................................................................... 17

        1.      The FAC alleges real-time duplication of Plaintiff's outbound destination requests —not mere disclosure of her IP address. ................................................ 17

        2.      Defendant's telephone analogy proves Plaintiff's point. ........................... 18

        3.      The FAC alleges capture of destination addresses, not merely Plaintiff's own device information. ............................................................................. 19

        4.      URLs constitute addressing information under Ninth Circuit and district court authority. ............................................................................................. 19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

2

C.    Section 638.51 Applies to Electronic Communications, Not Merely Telephonic Communications...........................................................................................21

1.    The statutory text expressly governs "wire or electronic communications." ............21

2.    The Ninth Circuit has held that CIPA applies to internet communications and should not be frozen in time.....................................................................................22

3.    Section 638.52's references to "telephone lines" do not limit Section 638.51's scope. ......................................................................................................................22

4.    Legislative purpose confirms that Section 638.51 reaches modern tracking technologies. ...........................................................................................................23

VII.    CONCLUSION.................................................................................................24

1:25-cv-01287-JLT-HBK

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**CASES**

*American Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988) .............................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................10, 13

*Aviles v. Liveramp, Inc.*,
    No. 24STCV19869, 2025 Cal. Super. LEXIS 776 ........................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .........................................................................................5

*Camplisson v. Adidas Am., Inc.*,
    No. 25-cv-603-GPC-KSC, 2025 U.S. Dist. LEXIS 228012
    (S.D. Cal. Nov. 18, 2025) ...........................................3, 16, 20, 21, 22, 23

*Doe v. Eating Recovery Center, LLC*,
    No. 23-cv-05561-VC,, 2025 U.S. Dist. LEXIS 207952
    (N.D. Cal. Oct. 17, 2025) ...........................1, 7, 8, 9, 10, 11, 13

*Foman v. Davis*,
    371 U.S. 178 (1962) .........................................................................................6

*Greenley v. Kochava, Inc.*,
    684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......................................................20

*Heerde v. Learfield Communications*,
    741 F. Supp. 3d 849 (C.D. Cal. 2024) ...................................................13, 14

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ..........................................................3, 7, 13, 22

*In re Google Inc. Gmail Litigation*,
    No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784
    (N.D. Cal. Sept. 26, 2013) ...........................................................12, 13, 22

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ...........................................................8

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ...................................................................7, 20

1:25-cv-01287-JLT-HBK

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Javier v. Assurance IQ, LLC,*
  No. 21-16351, 2022 U.S. App. LEXIS 14951
  (9th Cir. May 31, 2022) ............................................................................3, 16, 22

*King v. Hard Rock Cafe International (USA), Inc.,*
  No. 2:24-cv-01119-DC-CKD, 2025 U.S. Dist. LEXIS 109123
  (E.D. Cal. June 9, 2025)............................................................................9

*Lopez v. Smith,*
  203 F.3d 1122 (9th Cir. 2000) (en banc) .......................................................6

Mirmalek v. Los Angeles Times Communs. LLC,
  No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ...................20

*Molsbergen v. United States,*
  757 F.2d 1016 (9th Cir. 1985)...................................................................6

Moody v. C2 Educ. Sys. Inc.,
  742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......................................................20

*PAE Gov't Servs., Inc. v. MPRI, Inc.,*
  514 F.3d 856 (9th Cir. 2007) ...................................................................5

*Palacios v. Fandom, Inc.,*
  No. 24STCV11264, 2024 Cal. Super. LEXIS 61790 ..........................................21

*Papasan v. Allain,*
  478 U.S. 265, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)..................................5

Shah v. Fandom, Inc.,
  754 F. Supp. 3d 924 (N.D. Cal. 2024) ...................................................20, 22

*Torres v. Prudential Financial,*
  No. 22-cv-07465 (CRB), 2025 U.S. Dist. LEXIS 73736
  (N.D. Cal. Apr. 17, 2025) .........................................................9, 11, 12, 13

*United States v. Forrester,*
  512 F.3d 500 (9th Cir. 2008) ...................................................................7

*United States v. Webb,*
  655 F.2d 977, 979 (9th Cir. 1981) ............................................................7

*Williams v. DDR Media, LLC,*
  757 F. Supp. 3d 989 (N.D. Cal. 2024) ...................................................9, 11, 12

**STATUTES**

Cal. Penal Code § 630...............................................................................23

Cal. Penal Code § 631 ................................................................1, 2, 3, 4, 5, 6, 8, 9, 13, 22

Cal. Penal Code § 631(a) ...............................................................................................14, 15

Cal. Penal Code § 638.50 ...............................................................................16, 20, 22, 23, 24

Cal. Penal Code § 638.50(b) ...........................................................2, 5, 6, 16, 19, 21, 22

Cal. Penal Code § 638.50(c) ...............................................................................................21, 22

Cal. Penal Code § 638.51 ................................1, 2, 3, 4, 5, 6, 8, 15, 18, 20, 21, 22, 23, 24

Cal. Penal Code § 638.51(a) ......................................................................................................23

Cal. Penal Code § 638.52 .....................................................................................................22, 23

Cal. Penal Code § 638.52(d) ...............................................................................................22, 23

Cal. Penal Code §§ 630–638.55 ..................................................................................................1

**RULES**

18 U.S.C. § 2510(8) .........................................................................................................................5

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................2, 3, 10

Fed. R. Civ. Proc. 15(a)(2) ............................................................................................................24

Fed. R. Civ. Proc. 8(d)(2)-(3) ........................................................................................................5

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**I.    INTRODUCTION**

The California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630–638.55, protects against the unauthorized interception and monitoring of wire and electronic communications. Defendant The Procter & Gamble Company ("P&G" or "Defendant") filed its Motion to Dismiss [ECF No. 15] (the "MTD") which rests on two primary contentions neither of which warrants dismissal. On Section 631, Defendant concedes that URLs "could plausibly be understood" as content but argues that drafting ambiguities in the First Amended Complaint [ECF No. 14] (the "FAC") should bar the claim. On Section 638.51, Defendant ignores three of the statute's four categories of protected information and relies on nonbinding state trial court orders to argue that CIPA does not reach the internet. As set forth below, the FAC states plausible claims under both statutes.

**II.    SUMMARY OF ARGUMENT**

The First Amended Complaint alleges that third party tracking scripts embedded on Defendant's website intercepted Plaintiff's communications, including the full URLs of the pages she visited, and transmitted them to multiple third parties before the requested pages finished loading. FAC ¶¶ 3, 6-9, 11-12, 81, 149-152, 160-162, 165, 277-280.  For example, when Google received the URL "ivory.com/this-deodorant-is-kinder-and-gentler-on-your-skin" through its advertising infrastructure, including DoubleClick which operates as an advertising exchange in the real-time bidding ecosystem, and used that data to classify Plaintiff's interests and facilitate bidding on advertising inventory, it was not "sorting mail" after the fact.  Google was reading the URL content as it received it in order to serve targeted advertisements. FAC ¶¶ 119–27, 150, 160–61, 217, 226, 233.

Defendant argues no third party "read" Plaintiff's communications in transit, relying on *Doe v. Eating Recovery Center, LLC*, No. 23-cv-05561-VC,, 2025 U.S. Dist. LEXIS 207952, at *13–14 (N.D. Cal. Oct. 17, 2025), a summary-judgment decision in which the court found Meta's Pixel performed automated filtering *after* transmission was complete. *Doe's* "sorting mail" analogy turned on the notion

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  that routing mail to the correct destination does not require reading the envelope's contents. *Id*. at *13.

2  But the FAC alleges real-time interception *during* transmission, not post-hoc filtering, a factual

3  distinction that cannot be resolved on a Rule 12(b)(6) motion.  P&G also claims Plaintiff "disclaimed"

4  content interception based on FAC ¶ 153, but that paragraph addresses § 638.51's pen register

5  framework and does not purport to limit the FAC's detailed § 631 content allegations. See FAC ¶¶ 3,

6  11, 160–62, 165.  Plaintiff has clearly alleged that the content set forth in the complaint was transmitted

7  to third parties in support of her § 631 claim, and any ambiguity arising from the FAC's dual-statute

8  structure can readily be corrected by amendment.

9  As to Section 638.51, P&G advances two arguments: that the trackers captured only Plaintiff's

10  "own" device information rather than destination addressing data, and that Section 638.51 applies only

11  to telephonic communications. Both fail. As a threshold matter, P&G focuses exclusively on

12  "addressing" while ignoring the statute's three other categories, which are dialing, routing, and

13  signaling, all of which the FAC alleges were captured.  On the merits, the FAC alleges that Defendant's

14  trackers captured the specific destination URLs Plaintiff was attempting to reach, which is the digital

15  equivalent of outgoing telephone numbers, and transmitted them to third-party advertising networks in

16  real time. FAC ¶¶ 149-152, 161, 272. And the statute's text expressly covers "wire or electronic

17  communication," not merely telephone lines.  Cal. Penal Code § 638.50(b).  P&G's reliance on

18  nonbinding state court orders does not change this result.

19  ## III.  <u>PROCEDURAL HISTORY</u>

20  On September 29, 2025, Plaintiff filed this action asserting a single cause of action under Penal

21  Code § 638.51 [ECF No. 1]. On November 21, 2025, Defendant moved to dismiss [ECF No. 8], but

22  that motion was rendered moot when Plaintiff filed a First Amended Complaint on January 5, 2026

23  [ECF No. 14]. The First Amended Complaint preserved most of the content of the original complaint,

24  added a second cause of action under Penal Code § 631, and included both detailed "content of

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

communications" allegations supporting the § 631 claim and "non-content" characterizations supporting the § 638.51 claim, without clearly reflecting the dual nature of descriptive URLs. The incorporation clause at the beginning of the § 631 cause of action then swept both sets of characterizations into that claim. On January 20, 2026, Defendant filed a Motion to Dismiss directed at the First Amended Complaint [ECF No. 15]. Plaintiff now opposes Defendant's Motion.

## IV.    LEGAL STANDARD

Plaintiff accepts the Rule 12(b)(6) plausibility standard. CIPA codifies "a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing," *Camplisson v. Adidas Am., Inc.*, No. 25-cv-603-GPC-KSC, 2025 U.S. Dist. LEXIS 228012, at *15 (S.D. Cal. Nov. 18, 2025) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)), and "all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA," id. at *18 (quoting *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *4-5 (9th Cir. May 31, 2022)). The FAC alleges specific facts showing third parties received dialing, routing, addressing, and signaling information as well as URL-level data revealing the substance of Plaintiff's communications. The extent to which Defendant's conduct amounts to content interception under § 631, non-content tracking under § 638.51, or both, is a merits question.

## V.    PLAINTIFF STATES A CLAIM UNDER CALIFORNIA PENAL CODE § 631

### B.    The FAC Alleges Interception of Communication "Contents."

P&G's lead contention is that Plaintiff's Section 631 claim fails because the FAC "expressly disclaims" interception of communication contents. P&G does not dispute that URLs and request data can qualify as "contents of communications"; it acknowledges they "could plausibly be understood" as content. MTD at 4:10-12. Defendant's argument rests on language throughout the FAC's § 638.51 allegations characterizing the captured data as "not the contents of a communication," language that tracks the pen register statute's framework. But the FAC's § 638.51 sections necessarily use non-

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

content terminology because that is what the § 638.50(b) claim is directed to: pen registers and trap and trace devices by definition capture information that is "not the contents of a communication." That the FAC characterizes data as non-content for Section 638.51 purposes does not foreclose characterizing the same data as content for Section 631 purposes. As discussed *infra* in section V.A.2,  the URLs at issue serve dual functions as addressing information under § 638.51 and as content information under § 631. FAC ¶¶ 158–62. This Court should reject P&G's effort to elevate statutory characterizations drafted for one claim over the FAC's detailed factual allegations supporting another.

### 1.    *P&G's "Judicial Admission" Argument Fails.*

P&G argues that the FAC's repeated characterization of captured data as "non-content signaling information" constitutes a judicial admission foreclosing Plaintiff's Section 631 claim. P&G points to ¶¶ 153, 230, 244, and 257, all incorporated into the § 631 claim by ¶ 274. That argument fails for at least three reasons.

**First**, the FAC's substantive factual allegations, which the Court must accept as true, clearly and repeatedly allege interception of communication contents:

- "Defendant unlawfully shares the content of users' communications including the specific URLs revealing sensitive, private and embarassing [*sic*] pages users visit…" FAC ¶ 3.

- "Defendant and the Third Parties operating them also unlawfully intercept and disclose the content of users' electronic communications." FAC ¶ 11.

- "Each time Plaintiff accessed these body odor-related pages, Defendant's Website caused her browser to transmit the complete URLs including the article titles explicitly referencing 'deodorant,' 'odor,' and 'gentler on your skin' to multiple third-party tracking companies." FAC ¶ 160.

- "Each of these third parties received … the human-readable, semantic content embedded in the URLs themselves—specifically, that Plaintiff was reading articles about body odor, deodorant

1    efficacy, underarm odor protection, and sensitive skin issues..." FAC ¶ 162.

2    • Defendant transmitted "the literal text" in "human-readable" form, "immediately revealing to

3    those third parties that Plaintiff was seeking information about body odor management..." FAC

4    ¶ 165.

5    The FAC identifies which URLs were tracked, which third parties received them, and provides

6    visual corroboration in Figures 11 and 15. These detailed factual allegations cannot be negated by

7    isolated statutory phrasing drafted for a different claim.

8    **Second,** ¶ 153 does not operate as a judicial admission under controlling law. The Ninth Circuit

9    defines judicial admissions narrowly as "formal admissions in the pleadings which have the effect of

10   withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *American

11   Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Moreover, the Federal Rules

12   expressly permit alternative and even inconsistent pleading. Fed. R. Civ. P. 8(d)(2)-(3); *see PAE Gov't

13   Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–60 (9th Cir. 2007) (holding that inconsistent allegations

14   cannot be struck absent a bad-faith finding under Rule 11). Paragraph 153 is a characterization of data

15   for purposes of § 638.51's pen register framework, not a binding factual concession that forecloses a

16   separate claim under a different statute. Moreover, the characterization in ¶ 153 is a legal conclusion

17   tied to § 638.51's statutory framework, not a factual allegation. Courts "are not bound to accept as true

18   a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

19   (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

20   Paragraph 153 applies § 638.50(b)'s statutory language ("but not the contents of a communication") to

21   the pen register claim; it does not and cannot bind the Court's independent evaluation of whether the

22   same factual transmission satisfies § 631's separate 'contents' element, which has its own statutory

23   definition under 18 U.S.C. § 2510(8).

24   The Ninth Circuit has repeatedly held that such alternative theories cannot be treated as judicial

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

admissions. In *Molsbergen v. United States*, the court cautioned that allowing one claim to be used as an admission against an inconsistent claim "would significantly restrict, if not eliminate, the freedom to plead inconsistent claims provided by Rule 8(e)(2)." *Molsbergen v. United States,* 757 F.2d 1016, 1019 (9th Cir. 1985). To the extent ¶ 153 creates any tension with the § 631 allegations, that tension is what Rule 8 contemplates.

**Third**, the FAC's structure reflects the dual nature of the data at issue. Paragraph 153 appears in Subsection 7 ("Plaintiff's Personal Behavioral Information Was Shared With Third Parties"), which characterizes the captured data as "routing, dialing, addressing, and signaling information" tracking the statutory language of § 638.50(b) for the pen register claim. The very next Subsection 8 ("Plaintiff's Body Odor Concerns Were Disclosed To Third Parties") characterizes the same URL transmissions as *content*, alleging that third parties received "the human-readable, semantic content embedded in the URLs themselves." FAC ¶ 162. Paragraph 153 was drafted to support the § 638.51 claim; it was not intended as a concession applicable to § 631. But counsel did not delineate which characterizations pertain to which statute, and the incorporation clause at ¶ 274 swept both into the § 631 cause of action. This is a structural byproduct of the FAC's dual-statute structure, not a strategic concession. And it is not a basis for dismissal.

Under *Foman v. Davis*, leave to amend "shall be freely given when justice so requires," and "this mandate is to be heeded." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Denial of leave without a justifying reason such as undue delay, bad faith, repeated failure to cure, undue prejudice, or futility is an abuse of discretion. *Id*. The Ninth Circuit has held that dismissal without leave to amend is proper only where "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Plaintiff can cure any tension by amending to delineate which allegations pertain to § 631 and which to § 638.51. That is the opposite of futility. P&G identifies no prejudice, no undue delay, no bad faith. Using a structural ambiguity as a basis for with-prejudice

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  dismissal would conflict with the Ninth Circuit's "extreme liberality" standard for amendments. *United*

2  *States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

3      The Court should reject P&G's judicial-admission argument; if the Court has any concern about

4  ¶ 153, the appropriate remedy is leave to amend, not dismissal.

5               **2.    *The FAC Plausibly Alleges Interception of "Contents."***

6      Because P&G does not dispute the legal proposition that descriptive URLs can qualify as

7  "contents," the Court need not resolve that question in the abstract. MTD at 4:10-12.  The only question

8  is whether the FAC plausibly alleges interception of contents. It does.

9      P&G's suggestion that Plaintiff must allege transmission of "Webpage Files" to state a Section

10 631 claim misunderstands the "contents" inquiry. MTD at 19:6-11.  California courts look to federal

11 wiretap law when interpreting CIPA, and the federal Wiretap Act defines "contents" as "any

12 information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. §

13 2510(8); *see In re Zynga Privacy Litig.*, 750 F.3d 1098, 1105-06 (9th Cir. 2014) (applying federal

14 definition in CIPA context).  The question is not whether the third parties received the webpage *files*

15 (the HTML, images, and text that render on the user's screen). The question is whether the *URLs*

16 *themselves* reveal the "substance, purport, or meaning" of Plaintiff's communications.

17     Courts have held that descriptive URLs revealing what a user is researching rather than merely

18 where the user navigated can be revealing of personal queries and constitute communication content.

19 For example, in *In re Facebook, Inc. Internet Tracking Litig.* the Ninth Circuit explained that a URL

20 identifying "the particular document within a website that a person views" reveals "much more

21 information" than a mere IP address.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605

22 (9th Cir. 2020) (quoting *United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008)).   The Court

23 further noted that such URLs "could divulge a user's personal interests, queries, and habits." *In re*

24 *Facebook, Id.* at 605. Similarly in *Doe*, the Court held that captured URLs and related event data were

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

"sufficient to qualify as contents of a communication," and explained that several courts have treated "detailed URLs that reveal the specific document, product, or service that a user is viewing" as content. *Doe v. Eating Recovery Ctr.*, No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952, at *10–11 (N.D. Cal. Oct. 17, 2025). Likewise, the Court in *In re Meta Pixel Healthcare Litig. explained that* descriptive URLs containing path and query strings are content "because they concern the substance of a communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795–96 (N.D. Cal. 2022).

Modern URLs can serve dual functions: as addressing information identifying the destination of a communication, and as content-bearing information when they include human-readable descriptors revealing what the user is researching. The URLs at issue here perform both functions. As destination addresses, they identify where Plaintiff was navigating, supporting Plaintiff's Section 638.51 claim. As content-bearing descriptors, they disclose the specific substance of Plaintiff's research into body-odor management and personal hygiene concerns, supporting Plaintiff's Section 631 claim. FAC ¶¶ 158–162. The human-readable text "this-deodorant-is-kinder-and-gentler-on-your-skin" is not an opaque routing code; it is plain-English text revealing what Plaintiff was viewing. When the third parties received these URLs, they received both the destination Plaintiff was "dialing" and the "substance, purport, or meaning" of her communications.

The FAC's allegations fall squarely within this authority. Plaintiff alleges she visited articles titled "Finally, a Gentler and Kinder Deodorant" and "This Deodorant is Kinder and Gentler on Your Skin," both explicitly discussing "odor protection," "fighting body odor," and solutions for "sensitive" underarm skin. FAC ¶¶ 158–60, 165. The FAC alleges that each time Plaintiff accessed these pages, P&G's trackers transmitted the complete URLs including the article titles explicitly referencing deodorant and skin concerns to multiple third-party tracking companies. FAC ¶ 160. Those third parties received "the human-readable, semantic content embedded in the URLs themselves, specifically that Plaintiff was reading articles about body odor, deodorant efficacy, underarm odor protection, and

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

sensitive skin issues related to odor management." FAC ¶ 162. These URLs do not merely identify where Plaintiff navigated; they reveal what she was researching. FAC ¶¶ 167–87.

This case presents exactly the specificity that *King v. Hard Rock Cafe International (USA), Inc.*, No. 2:24-cv-01119-DC-CKD, 2025 U.S. Dist. LEXIS 109123 (E.D. Cal. June 9, 2025), found lacking. There, this District dismissed a § 631 claim where the plaintiff alleged only generic "button clicks" and "guest records"  and "provide[d] examples of the types of 'full-string URLs' allegedly intercepted by Meta, but [did] not allege [plaintiff] conducted the searches or visited the webpages provided in the examples." *Id.* at *10–12.  Unlike *King,* the instant FAC identifies the exact URLs transmitted during Plaintiff's visit, the specific third parties that received them, and provides visual corroboration (*see* FAC ¶¶ 226, 240; Figures 11 and 15).

### C.    Plaintiff Adequately Alleges That Third Parties "Read" Communications "In Transit."

P&G argues that even if URLs constitute contents, the third-party trackers did not "read" those contents within the meaning of Section 631. In *Williams v. DDR Media, LLC*, the court  explained that CIPA's statutory language "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication" requires "some effort at understanding the substantive meaning of the message, report or communication.*" Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024).  Both *Doe v. Eating Recovery Center*, No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952, at *13 (N.D. Cal. Oct. 17, 2025), and *Torres v. Prudential Financial*, No. 22-cv-07465 (CRB), 2025 U.S. Dist. LEXIS 73736, at *14 (N.D. Cal. Apr. 17, 2025), adopted this standard. As explained below, the FAC plausibly alleges conduct that satisfies it.

#### 1.    *Doe v. ERC is inapposite because it addressed Meta Pixel on summary judgment, not RTB platforms at the pleading stage.*

P&G's argument leans heavily on *Doe*'s conclusion that Meta's automated Pixel filtering does

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

not constitute "reading" for purposes of Section 631. That reliance is misplaced for at least three reasons.

**First**, *Doe* was decided on summary judgment after the parties conducted discovery and developed a factual record regarding how Meta Pixel operated as configured on Eating Recovery Center's website. P&G now asks this Court to import *Doe*'s post-discovery factual findings wholesale at the pleading stage, before any discovery, and apply them to different tracking technologies on a different website. Meta Pixel is highly configurable; website operators make choices about which events to track, what data to collect, and how to process that information. There is no basis to assume, and Plaintiff does not concede, that Defendant configured Meta Pixel the same way the defendant did in *Doe*. Moreover, the FAC alleges multiple trackers beyond Meta, each with its own architecture and data-processing methods. FAC ¶¶ 6–9, 223–35, 236–49, 250–62. The FAC plausibly alleges that these trackers engage in interception of Plaintiff's communications for the purpose of participating in real-time bidding at scale. FAC ¶¶ 103–104, 119–132, 142, 145, 186, 202. At the pleading stage, the Court must accept those allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). P&G's factual counter-narrative that none of these trackers actually "read" anything is an argument for summary judgment, not a basis for dismissal under Rule 12(b)(6).

**Second**, *Doe* addressed a particular implementation of the Meta Pixel as a passive event-tracking script that logs events for later downstream processing. The court's analogy to "sorting mail" is framed around that passive, post-hoc filtering. *Doe*, 2025 U.S. Dist. LEXIS 207952, at *13. Here, the FAC alleges materially different technology and conduct. Plaintiff alleges interception by Tapad, a registered data broker and identity-resolution platform, and by Google, which operates real-time bidding infrastructure. FAC ¶¶ 6–9, 214, 216, 223–235, 250–262. FAC ¶ 11 alleges that third-party tracking code "executed contemporaneously with each communication Plaintiff attempted to send to the Website" and that "embedded scripts automatically duplicated and transmitted the same dialing,

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

routing, addressing, and signaling information to remote third-party endpoints during the transmission itself, before the requested page finished loading." FAC ¶ 81 alleges these transmissions were "triggered the moment Plaintiff's browser attempted to load each page," routing to advertising and identity-resolution endpoints "before the requested pages finished loading." FAC ¶ 277 alleges the transmissions occurred "within milliseconds of the initial page request and before Defendant delivered the requested content to Plaintiff's device." Regardless, the critical distinction is not "timing measured in milliseconds," but rather that the tracker scripts fired "the moment Plaintiff's browser attempted to load each page," duplicating her outgoing requests "during the transmission itself, before the requested page finished loading." FAC ¶¶ 11, 81. That is interception during transmission, not post-hoc logging.

These allegations of contemporaneous, active, real-time duplication during transmission distinguish this case from *Doe*'s sorting mail paradigm. In *Doe*, processing occurred "0.2 seconds **after** the visitor's action is transmitted to the website." *Doe,* 2025 U.S. Dist. LEXIS 207952, at *13–14 (emphasis added). Here, the FAC alleges processing *during* transmission. Notably, although Meta is theoretically capable of operating extensive real-time bidding, identity-resolution, and cross-site advertising systems, *Doe* did not evaluate those systems. The *Doe* court's analysis was limited to a specific Meta Pixel configuration examined on a developed evidentiary record and turned on the absence of proof that the Pixel's filtering mechanisms resulted in any third-party reading contents in transit.

**Third**, the systems at issue in *Doe*, *Torres*, and *Williams* share a common feature that distinguishes them from the RTB ecosystem alleged here: they accomplished their purpose *without* needing to understand the substantive meaning of the data they processed. The sorting mail in *Doe*'s analogy succeeds by routing mail to the correct destination; reading the envelope's contents would not help accomplish that task. *Doe,* 2025 U.S. Dist. LEXIS 207952, at *13. In *Williams*, the hashing system functioned by confirming whether two inputs matched, without interpreting or understanding the

1  substantive meaning of those inputs. *Williams,* 757 F. Supp. 3d at 993–94.  And the session-replay

2  system in *Torres* merely reassembled events "mechanically and without any attempt to decode [their]

3  underlying meaning." *Torres* , 2025 U.S. Dist. LEXIS 73736, at *17–18.

4      Real-time bidding as implemented on P&G's website is fundamentally different. The FAC

5  alleges that the third-party trackers' operations went beyond passive data routing. Upon receiving

6  Plaintiff's URL data, the third parties "performed automated ID-graph operations" including "mapping

7  the identifier to a device or household, updating existing graph nodes, and propagating the appended

8  identifier into downstream advertising datasets." FAC ¶ 217. The FAC further alleges that demand-

9  side platforms "examine the broadcasted data to determine whether to make a bid" within millisecond

10  timeframes. FAC ¶ 123; see also ¶¶ 119–27.

11      Taking these allegations as true, the FAC plausibly alleges conduct satisfying the *Williams*

12  standard. To classify Plaintiff as a user interested in body-odor products for real time bidding requires

13  comprehending what Plaintiff's URL data consists of. The FAC's allegations support the inference that

14  a system bidding to show Plaintiff deodorant advertisements would need to understand that she was

15  viewing deodorant-related content. The FAC's allegations that the trackers "examine[d] the

16  broadcasted data" (FAC ¶ 123) to classify Plaintiff's interests and facilitate bidding directly satisfy the

17  *Williams* standard. Algorithmic hashing requires no understanding of meaning; RTB does. A system

18  bidding to show Plaintiff deodorant advertisements must comprehend that she was viewing deodorant-

19  related content. Unlike the mail sorter, which succeeds by *not* reading, RTB plausibly succeeds *because*

20  it reads.

21      Courts have permitted wiretap claims to proceed where automated systems process

22  communications for commercial purposes. In *In re Google Inc. Gmail Litigation*, the court denied

23  Google's motion to dismiss Wiretap Act claims based on Gmail's automated scanning of email content

24  to deliver targeted advertising, finding plaintiffs plausibly alleged Google's interceptions were "neither

instrumental to the provision of email services, nor . . . an incidental effect of providing these services." *In re Google Inc. Gmail Litigation*, No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, at *42 (N.D. Cal. Sept. 26, 2013). The same logic applies here.  RTB systems process Plaintiff's URL data to classify her interests and serve targeted advertisements: a commercial purpose unrelated to the communication itself.

The *Torres* court recognized this distinction. In a footnote, the court contrasted passive session-replay facts with cases where § 631 claims survived because the defendants actively used intercepted data, noting that in *In re Facebook*, Facebook "compiled the [data] it collected into personal user profiles," and in *In re Google*, Google intercepted email content "for the purposes of sending an advertisement relevant to that email communication." *Torres*, 2025 U.S. Dist. LEXIS 73736, at *16–17 n.5.  The FAC here alleges the same kind of active, purpose-driven processing. FAC ¶¶ 123, 186, 217, 233 (the software "examine[s] the broadcasted data to determine whether to make a bid").  The question of whether such an "examination" constitutes "reading" under § 631 is a factual dispute that cannot be resolved on a motion to dismiss. P&G asks this Court to assume without any factual record that every tracking system operates like Meta's Pixel in *Doe*. But the FAC alleges otherwise, and those allegations must be accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. at 678.

### 2.    The FAC plausibly alleges contemporaneous, in-transit interception.

P&G also argues that the communications were not intercepted "in transit" because third parties supposedly received data only after the transmissions were complete.  MTD at 20-21. That assertion is flatly contradicted by the FAC, which alleges that third-party scripts executed contemporaneously with Plaintiff's communications, transmitting data "during the transmission itself, before the requested page finished loading." FAC ¶¶ 11, 81, 277.

Courts have held that simultaneous duplication and redirection satisfies the "in transit" requirement. In *Heerde v. Learfield Communications*, the court found adequate allegations of

interception "in transit" where plaintiffs alleged their search terms "were replicated and sent in parallel to the tracking entities" as they were submitted. *Heerde v. Learfield Communications*, 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024). The court denied the motion to dismiss, holding that plaintiffs had "allege[d] sufficiently [that] Defendants attempted to learn the contents of their communications." *Id.* at 863. Plaintiff's allegations are analogous: the human-readable article titles embedded in her URLs were duplicated and transmitted to tracking entities "during the transmission itself, before the requested page finished loading." FAC ¶ 11.

### D.    P&G Is Independently Liable Under Section 631(a)'s "Use" and "Aiding" Provisions.

Even if the Court were to conclude that the third-party trackers did not "read" Plaintiff's communications, Section 631(a) imposes independent liability both for (1) using information obtained through unlawful interception (Clause 3), and for (2) aiding, agreeing with, employing, or conspiring with those who intercept communications (Clause 4).

### 1.    *P&G "used" the intercepted information.*

Section 631(a) independently prohibits any person who "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained..." Cal. Penal Code § 631(a). The FAC alleges that P&G "knowingly used the information obtained through these interceptions to analyze and track user behavior and to optimize advertising-related functions on its website." FAC ¶ 282. Specifically, P&G used the intercepted data to build "detailed behavioral profiles," deliver "retargeted ads to users who previously visited the Website," and construct "lookalike audiences" for targeted advertising. FAC ¶ 97. P&G also received analytics revealing "which articles users read, how users navigate through body odor-related content, and which messaging is most effective at converting users..." FAC ¶ 205.

/ / /

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

These allegations state a claim under Clause 3 of Section 631(a) regardless of whether the third

parties' receipt of Plaintiff's data constituted "reading."

### 2. P&G "aided" the third-party interceptions.

Section 631(a) also prohibits any person who "aids, agrees with, employs, or conspires with any

person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned

above." Cal. Penal Code § 631(a). The FAC expressly alleges that "Defendant aids, employs, agrees,

and conspires with the Third Parties by enabling the Trackers, which transmit user data to third-party

servers..." FAC ¶ 8. P&G embedded and configured the third party tracking scripts on its website,

causing Plaintiff's browser to transmit her communications to Google, Meta, Tapad, and others. That

conduct falls squarely within "aids, agrees with, employs." FAC ¶¶ 75, 227, 241, 254, 279.  As the

FAC alleges, "Defendant's intentional deployment of these third-party scripts constitutes aiding and

assisting the unlawful interception of Plaintiff's communications under § 631(a)." FAC ¶ 279.

P&G cannot escape liability by pointing to the third parties as the "actual interceptors." Section

631(a) imposes liability on those who aid interception, not merely those who perform it. The FAC

adequately alleges P&G did both.

## VI. PLAINTIFF'S SECTION 638.51 CLAIM STATES A PLAUSIBLE CLAIM FOR RELIEF

Defendant seeks dismissal of Plaintiff's Section 638.51 claim on two grounds: (1) that the

trackers do not capture "destination" or "origin" addressing information, but merely Plaintiff's "own"

device identifiers; and (2) that Section 638.51 applies only to telephonic communications. Both

arguments fail.

### A. P&G's Narrow Framing Misreads the Statute and the FAC.

P&G devotes considerable space to arguing that the trackers did not capture "destination address

information" but merely "Plaintiff's own device information." MTD at 8–14. This framing suffers from

two fundamental flaws.

**First**, it misreads the statute. Section 638.50(b) defines a pen register as a device that records "dialing, routing, addressing, or signaling information." Cal. Penal Code § 638.50(b). P&G focuses exclusively on "addressing," and then only on whether the data qualifies as "destination" versus "own device" addresses.  But the FAC alleges capture of all four categories: dialing information (destination URLs Plaintiff attempted to reach), routing information (referrer headers and navigation paths), addressing information (complete document-location values transmitted to third parties), and signaling information (timestamps and persistent identifiers). FAC ¶¶ 10, 11, 149–52, 160–61, 272, Figs. 11, 15. P&G's motion ignores three of the four statutory categories.  Section 638.50's definition "has been understood to be intentionally broad and not limited to specific technology, as 'all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA.'" *Camplisson v. Adidas Am., Inc.*, No. 25-cv-603-GPC-KSC, 2025 U.S. Dist. LEXIS 228012, at *18 (S.D. Cal. Nov. 18, 2025) (quoting *Javier*, 2022 U.S. App. LEXIS 14951, at *4-5).  The statute does not require Plaintiff to parse each data element into a single category at the pleading stage; it requires only plausible allegations that the trackers captured "dialing, routing, addressing, or signaling information." The FAC alleges all four.  FAC ¶¶ 150–52, 160–61, 226, 240, 272.  P&G's narrow focus on a single statutory category (addressing information) is inconsistent with this breadth.[1]

**Second**, P&G mischaracterizes the FAC. The FAC does not allege mere disclosure of Plaintiff's IP address. It alleges that third-party scripts captured destination URLs, referrer headers, user-agent strings, timing signals, persistent tracking identifiers, and behavioral telemetry, and transmitted them to advertising and identity-resolution companies in real time. FAC ¶¶ 10–11, 149–52, 160–62, 214.

---

[1] The statute is written in the disjunctive—"dialing, routing, addressing, **or** signaling"—and capture of any one category is sufficient. Cal. Penal Code § 638.50(b). P&G's motion addresses only "addressing" and offers no argument that the FAC's allegations of dialing, routing, and signaling information fall outside the statute or are otherwise insufficient.

1:25-cv-01287-JLT-HBK

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

P&G's reduction of these allegations to "Plaintiff's own device information" ignores the bulk of what the FAC actually pleads.

**B.      Plaintiff Alleges Capture and Transmission of Outgoing Destination Addressing Information.**

*1.      The FAC alleges real-time duplication of Plaintiff's outbound destination requests—not mere disclosure of her IP address.*

Defendant's lead argument rests on a false premise: that the Tracking Technologies are installed on Plaintiff's device and "collect address information about the Plaintiff's own device." MTD at 2:9-11. That is not what the FAC alleges. The FAC alleges that Defendant's trackers captured the destinations Plaintiff was attempting to reach and transmitted that destination-level data to third parties in real time. Specifically, the FAC alleges:

- Embedded scripts "automatically duplicated and transmitted the same dialing, routing, addressing, and signaling information to remote third-party endpoints during the transmission itself, before the requested page finished loading." FAC ¶ 11.

- "The third-party transmissions were triggered the moment Plaintiff's browser attempted to load each page, duplicating Plaintiff's outgoing GET and POST requests and routing those signals to multiple advertising and identity-resolution endpoints before the requested pages finished loading." FAC ¶ 81.

- Google Analytics received "complete 'document location' values identifying the exact products Plaintiff viewed," including specific destination URLs such as https://ivory.com/ivory-body-wash-coconut and https://ivory.com/ivory-gentle-coconut-deodorant. FAC ¶ 150.

- Meta received "these same product-page URLs through its PageView pixel events, which were triggered upon Plaintiff's navigation to each page." FAC ¶ 151.

/ / /

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

- BazaarVoice received "the product-page URLs for Plaintiff's body-wash product views" through "beacon transmissions containing 'ref=' parameters referencing the exact URLs Plaintiff accessed." FAC ¶ 152.

- Tapad received "complete URLs revealing Plaintiff's body odor article views through identifier synchronization requests." FAC ¶ 161.

- The trackers "recorded Plaintiff and Class Members' dialing, routing, addressing, and signaling information in real time, automatically transmitting this dialing, routing, addressing and signaling data to multiple third-party ad-tech endpoints before the Webpage fully loaded." FAC ¶ 272.

These allegations do not describe passive collection of Plaintiff's "own" IP address. They describe the real-time capture and transmission of the destinations Plaintiff was attempting to reach, which is the digital equivalent of recording dialed telephone numbers as set forth below.

### 2.    Defendant's telephone analogy proves Plaintiff's point.

Defendant offers a telephone analogy: "If that device recorded other phone numbers that Jenny dialed out from 867-5309, it would be a pen register." MTD at 12:1-3. Exactly so. Here, Plaintiff alleges that when she "dialed" URLs such as "https://ivory.com/ivory-body-wash-coconut", the trackers recorded that destination and transmitted it to third parties. FAC ¶¶ 150–52, 161. That is the functional equivalent of recording dialed numbers.

Defendant's error is conflating disclosure of Plaintiff's IP address with capture of Plaintiff's destination requests. The FAC alleges both, but it is the latter that triggers Section 638.51. The FAC's figures confirm this: Figure 11 shows the "dl" (document location) parameter transmitting https://ivory.com/... to Google; Figure 15 shows Meta receiving the same destination URLs. FAC Figs. 11, 15. These are not allegations about Plaintiff's "own" device information. They are allegations about the destinations she was attempting to communicate with.

1:25-cv-01287-JLT-HBK

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**3.      *The FAC alleges capture of destination addresses, not merely Plaintiff's own device information.***

P&G contends that "the only associated address information that Plaintiff puts at issue is the address information from Plaintiff's own device." MTD at 12:20-22. That misreads the FAC. Under HTTP protocol, each URL request is a separate electronic communication with its own addressing information. When Plaintiff's browser requested "ivory.com/ivory-body-wash-coconut," it initiated a distinct communication to that specific address. When it subsequently requested other article and product URLs, it initiated other distinct communications to different addresses. FAC ¶¶ 43–47, 150, 160.

To extend P&G's own analogy: if Jenny sends a fax to 867-5309, then another to 867-5310, then a third to 867-5311, each transmission is a distinct communication to a distinct destination. A pen register that captured each of those outgoing numbers would capture "destination" information, not merely Jenny's "own" information. That is precisely what the FAC alleges. Each time Plaintiff's browser requested a specific ivory.com URL, it "dialed" that address. The trackers captured and transmitted those destination addresses to third parties. FAC ¶¶ 150–52, 160–61. The fact that all destinations shared the ivory.com domain does not transform them into a single interaction. The statute covers "dialing, routing, addressing, or signaling information" and each URL is a distinct address that Plaintiff's browser dialed.

**4.      *URLs constitute addressing information under Ninth Circuit and district court authority.***

California Penal Code § 638.50(b) defines a pen register as a "device or process" that "records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted."

///

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

In *In re Zynga Privacy Litigation*, the Ninth Circuit recognized that a URL "identifies the location of a webpage a user is viewing on the internet" and thus "functions like an address" even though it may also embed additional information. *In re Zynga Privacy Litigation,* 750 F.3d 1098, 1107 (9th Cir. 2014) (internal punctuation omitted). Although *Zynga* arose under Section 631 and the federal Wiretap Act, its characterization of URLs as addressing information applies with equal force to Section 638.50's "routing, addressing, or signaling information" language.

Federal district courts applying Sections 638.50–638.51 have repeatedly held that tracker-based capture of routing and destination data states a plausible claim:

- *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023) (denying motion to dismiss Section 638.51 claim where trackers captured device identifiers combined with routing metadata)

- *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) ("Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51.")

- *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024) (the definition of "pen registers" under the California Invasion of Privacy Act (CIPA) is not limited to devices that operate like traditional phone pen registers);

- *Mirmalek v. Los Angeles Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *9 (N.D. Cal. Dec. 12, 2024) (plaintiff sufficiently alleged that the third-party trackers used by the defendant qualify as pen registers under CIPA).

- *Camplisson v. Adidas Am., Inc.,* No. 3:25-cv-00603-GPC-KSC, 2025 U.S. Dist. LEXIS 228012, at *20 (S.D. Cal. Nov. 18, 2025) ("Plaintiffs have sufficiently alleged that the Trackers record Class members' personal information, including the addressing information contained in an IP address, and thus plausibly constitute pen registers.")

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

These courts focus on whether routing or destination metadata is captured, not merely whether an IP address is disclosed. The FAC alleges exactly such capture. FAC ¶¶ 150–52, 160–61, 272.  The nonbinding state trial court orders P&G cites do not hold otherwise. *Palacios* and *Aviles* failed because the plaintiffs alleged only that trackers captured visitors' own IP addresses: the address *of* the device, not the addresses *dialed by* the device. See *Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 Cal. Super. LEXIS 61790, at *7 (no allegation of "destination information"); *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 Cal. Super. LEXIS 776, at *6 (no allegation of "outgoing addressing information"). Here, the FAC alleges that third parties received the specific destination URLs Plaintiff was attempting to reach, transmitted in human-readable form. FAC ¶¶ 150–52, 160–61, 165; Figs. 11, 15. Those are the "numbers" Plaintiff dialed.

**C.    Section 638.51 Applies to Electronic Communications, Not Merely Telephonic Communications.**

**1.    The statutory text expressly governs "wire or electronic communications."**

Defendant argues that Section 638.51 applies only to telephone lines. The statute's text forecloses this argument.  Section 638.50(b) defines a pen register as a device that records "dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted..." Cal. Penal Code § 638.50(b). Section 638.50(c) similarly defines a trap and trace device by reference to "a wire or electronic communication." *Id.* § 638.50(c). The Legislature did not limit these definitions to telephone lines; it expressly included "electronic communications."

Federal courts have consistently rejected the argument that CIPA was meant to apply only to telephonic technology. In *Camplisson*, the court squarely addressed this contention: "Defendant contends that CIPA was meant to apply to landline telephones and not to internet technologies....

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

However, legislators did not limit the statutory language to only telephone technologies." *Camplisson*, 2025 U.S. Dist. LEXIS 228012, at *13-14.  This Court need not look beyond the statute's plain text to reach the same conclusion.  Where the Legislature intended to reference only telephonic communications, it knew how to do so as it did in § 638.52(d)'s procedural provisions. Its choice of "wire or electronic communication" in §§ 638.50(b)–(c) was deliberate.

### 2.    The Ninth Circuit has held that CIPA applies to internet communications and should not be frozen in time.

The Ninth Circuit has squarely applied Section 631 to internet communications, holding that the simultaneous duplication of GET requests and full URLs during web browsing may constitute interception of the contents of a communication under CIPA, not merely telephony-based activity. *In re Facebook,* 956 F.3d 589, 607–08 (9th Cir. 2020).  In *Javier v. Assurance IQ, LLC*, the Ninth Circuit confirmed that "[t]hough written in terms of wiretapping, [CIPA] Section 631(a) applies to Internet communications." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022).  As the *Shah* court observed, "California courts do not read California statutes as limiting themselves to the traditional technologies or models in place at the time the statutes were enacted … [t]he California Supreme Court regularly reads statutes to apply to new technologies where such reading would not conflict with the statutory scheme." *Shah,* 754 F. Supp. 3d at 930 (citing *In re Google Inc.*, No. 13-MD-02430, 2013 U.S. Dist. LEXIS 172784, at *78 (N.D. Cal. Sept. 26, 2013)). These principles apply with equal force to Sections 638.50–638.51, which use the same "wire or electronic communication" language as Section 631.

### 3.    Section 638.52's references to "telephone lines" do not limit Section 638.51's scope.

Defendant points to Section 638.52(d), which references "telephone line" and "telephone number" in provisions governing court orders for law enforcement use of pen registers.  This argument

1:25-cv-01287-JLT-HBK

conflates procedural provisions with substantive prohibitions. Section 638.52 governs how law enforcement may obtain judicial authorization for pen registers and trap-and-trace devices. It does not define or limit the substantive prohibition in Section 638.51, which makes it unlawful for "a person" to "install or use" such devices "without first obtaining a court order" or user consent. Cal. Penal Code § 638.51(a). The definitions in Section 638.50, which expressly cover "electronic communications", control the scope of Section 638.51's prohibition. Reading Section 638.52's procedural references to "telephone lines" as limiting Section 638.51 would produce absurd results. It would mean that law enforcement installing pen registers on telephone lines must obtain court orders, but private parties deploying identical surveillance technology on websites face no restriction whatsoever. Nothing in the statutory scheme supports that result.

>    **4.    Legislative purpose confirms that Section 638.51 reaches modern tracking technologies.**

CIPA was enacted because "the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630. P&G's interpretation would immunize precisely the surveillance the Legislature sought to prevent merely because it occurs via JavaScript rather than copper wire. As the *Camplisson* court recognized, "[l]imiting the statute's intentionally broad language in such a way would take away from CIPA's purpose of protecting privacy, making it underinclusive." *Camplisson,* 2025 U.S. Dist. LEXIS 228012, at *19.

The nonbinding state trial court orders P&G cites on this point (*Scharon*, *Sanchez*, and *Rodriguez*) each rest on the premise that § 638.52(d)'s procedural provisions and legislative history limit § 638.51's substantive scope to telephonic communications, notwithstanding § 638.50's express inclusion of "electronic communications." All are unpublished trial-level decisions with no

precedential force. As discussed *supra*, federal courts addressing the same argument have repeatedly reached the opposite conclusion, holding that CIPA's text and purpose extend beyond traditional telephony to modern electronic communications. P&G's proffered state trial court orders are unpersuasive where they narrow broad statutory language in a way that undercuts CIPA's privacy-protective purpose and conflicts with the weight of federal authority applying Sections 638.50–638.51 to internet tracking technologies.

## VII.    CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss. Should the Court identify any pleading deficiency, Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

Respectfully submitted,

Dated:   February 3, 2026          **NATHAN & ASSOCIATES, APC**

By:  */s/ Reuben D. Nathan*
Reuben D. Nathan
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

**LAW OFFICES OF ROSS CORNELL, APC**
Ross Cornell, Esq. (SBN 210413)
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

*Attorneys for Plaintiff and the Putative Class*

1:25-cv-01287-JLT-HBK

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS